(34 Misc. Rep. 684.)

WESTPHAL v. CITY OF NEW YORK.     HILLER v. SAME (two cases).
DIECKMANN v. SAME.

(Supreme Court, Special Term, Kings County. May, 1901.)

TRESPASS—LIABILITY OF CITY—DIVERSION OF WATER.

> Where a city, by the erection and use of wells and pumps for supplying water to its citizens, affects the water supply of the premises of adjacent owners so as to make their lands less profitable for crops, it is guilty of a trespass, for which it is liable.

Actions by August Westphal, Theodore Hiller, Frederick Hiller, and John H. Dieckmann against the city of New York. Judgments for plaintiffs.

Charles Coleman Miller, for plaintiffs.
R. Percy Chittenden, for defendant.

GAYNOR, J. This case and three others, viz., of Theodore Hiller, Frederick Hiller and John H. Dieckmann, were tried at the same term, and by consent are to be considered together. There are certain general facts applicable to them all which will be considered first.

The plaintiffs all claim that the productive capacity of their farms is injured by the pumping of water out of the earth by the city in the vicinity. It is claimed that the surface of the land is dried up thereby. The pumping is from a depth of 36 to 157 feet below the surface. The claim is that this causes the water table or level to fall about 8 feet, and that that exhausts the moisture from the surface soil. This latter could not occur as a physical fact except where the water table is at or very close to the surface. In other words, it could only occur in the case of boggy or marsh land. In that case such marsh land would be turned into dry land, which is generally deemed an improvement instead of an injury. It is common knowledge that such land is made available for tillage as a rule only by the expense of draining it. Those having such land would as a rule be glad to have it drained or dried without their having to incur such expense. But where the water table is so far below the surface that the surface is not moistened from it by close contact, or by capillary attraction, a lowering of the water table would not affect the surface soil in respect of moisture. On the contrary, the space or stratum between the old and the new water table or level would soon become charged, just the same as the earth above it, with surface moisture, i. e., rain. The idea that the moisture at the surface would permanently fall or sink below the surface to a depth equal to such stratum between the old and the new water table is based on nothing. It is a common thing as we all know to have to go down 25 to 100 feet to get to the water table in localities having moist and good land. Such moisture does not depend at all on the depth of the water table below the surface, but on the rainfall. Water percolates downward to the water table by the force of gravity, and thus saturates the intervening earth. It can percolate upward from the water table only by the force of capillary attraction through earth void of moisture, and only slightly, for the two opposing forces meet and the latter is overcome. In addition to physical and scientific facts, the testimony for the defendant of witnesses who speak from actual experience of the water table under their land being lowered by the city's pumps, shows that a lowering of the water table could not dry up the earth's surface.

But the lands of the plaintiffs are marsh lands, with the water table close to the surface, and the claim is that it is injured by being made dry by the lowering of the water table. To make marsh

land dry and generally tillable is as a rule desirable, as we all know. But the plaintiffs say that it is favorable to certain crops which they raise, as lettuce, celery and some others, and that their crops have been greatly depreciated by the drying of the surface. Nevertheless they have gone on year after year raising these same crops, although according to their testimony they knew they would be ruined by the effect of the city's pumps. That being so the measure of damage may not be the value of the crops lost, as is claimed. But as no question seems to be made on that head, and as I cannot allow the large damages claimed, the measure of damage claimed by the plaintiffs will be accepted. I shall now dispose of each case separately.

1. The plaintiff Westphal's farm consists of 5½ acres, 5 of which is marsh land. It cost him $5,500 and is now worth $8,000. It is in the city and cannot long remain available for tillage owing to the city's growth. The pumping complained of began in 1894. Prior to that year the plaintiff testifies he received about $4,000 a year for the produce of his land, and that about $2,000 of this was net profit. I cannot credit that a yearly profit of $2,000 over and above all expenses, or anything near it, was made from 5½ acres of land worth $8,000. It is not true. A jury would not believe it. Farming is too well known not to be so profitable as that. Since that year he testifies that with the same work and effort his yearly product has so fallen off that it brings only about $850, though the market prices are he says as high as formerly. According to this there has been a yearly falling off of $3,150 in the gross receipts since 1894, and he has since then continued to lose not only his alleged former net profit of $2,000, but in addition to incur an actual yearly loss in expense above receipts of about $1,150. In this way the learned counsel for the plaintiff figures up in his brief $21,082 as the damage for the seven years. This testimony passes all credence. If the court believed it respect for the administration of justice and the discernment of courts would be lost. In the administration of justice things are not so easily taken for granted. Truth and falsehood are known at sight. The plaintiff kept no accounts, not even since he brought this action in 1898, although he knew that he would have to show the falling off in crops and receipts in order to recover. His mere word cannot be accepted for such improbable assertions.

Inasmuch, however, as the court of appeals in the case of Forbell v. City of New York, 164 N. Y. 522, 58 N. E. 644, has decided that the act of the city in pumping from adjoining lands is a trespass, I am required to give the plaintiff judgment for some amount to satisfy the law. He owns the land, and taking all of the credible evidence into consideration, and that his water supply was interfered with by the lowering of his well, that he incurred some expense, and that the action is in tort, I allow him $350 in all for the seven years.

2. The case of the plaintiff Theodore Hiller is even more improbable as presented by his own evidence. He hired 6½ acres of land from year to year, 6 of it being marsh land. He swears that in 1893 and 1894 (before the pumping complained of) his net annual profit was $1,000. In 1895 he swears that he came out even. In 1896 and 1897 he swears he lost $500 each year, in 1898 and 1899 $900 each

year, and in 1900 still more. This makes a total loss of over $3,000. I am asked to believe that although the plaintiff was a yearly tenant he continued to renew his lease and put in the same crops each successive year although he knew they would fail and that he would suffer these large losses. Of course I cannot and do not believe a word of it. How is it come to pass that this court is expected to believe it? When asked where he got the money to pay the losses he said he had $3,000 in a drawer in his house, and spent it all in paying these losses from year to year, and then gave up the farm. If courts were to believe everything like this that comes along they would only be laughed at. I allow this plaintiff $100 for the reasons stated in the preceding case.

3. The case of Frederick Hiller is substantially the same. He was a lessee from year to year of 6½ acres, 4 of which was marsh land. He testifies that his net profit in 1893 was $1,075 and in 1894 $200; and that his losses in 1895 and 1896 were $500 each year, in 1897 and 1898 $700 each year, and in 1899 and 1900 $800 each year. This is all incredible. I allow him $100.

4. The case of Dieckmann is substantially the same. He is also a lessee of only 5½ acres and put in the same crops year after year though suffering similar incredible losses each year, according to his story. I allow him $100.

It is the duty of this court to carefully scrutinize claims like these, and test them item by item. The testimony of these plaintiffs and of their witnesses on the question of losses is interested, grossly exaggerated and not credible. The city and its taxpayers are entitled to be protected against such claims. It seems to be thought that any case and any kind of testimony will suffice against the city, but it is not so. If these cases were against natural persons such evidence would not have been given at all. It is the first duty of one seeking justice to present a truthful case, and if he does not do so, but tries to deceive the court, he is not entitled to prevail.

Let judgments be entered.