(75 App. Div. 252.)

WESTPHAL et al. v. CITY OF NEW YORK. DIEKMANN v. SAME. HILLER v. SAME.

(Supreme Court, Appellate Division, Second Department. October 3, 1902.)

1. CITIES—WATER SUPPLY—PUMPING STATIONS—LOWERING WATER LEVEL—INJURY TO CROPS—DAMAGES.

In a suit in equity against a city to prevent a continuing trespass, and to recover damages caused by the water level of plaintiff's land being lowered so as to make it less fit for crops, because of wells driven by defendant near plaintiff's land, plaintiff was not entitled to recover for the loss of crops planted with the knowledge that they would be a failure, and that a different crop would yield a good return.

2. SAME—FEE DAMAGES—CONVEYANCE OF PLAINTIFF'S RIGHT.

In a suit against a city to prevent a continuing trespass, and for damages to plaintiff's land caused by defendant's pumping stations, where some of plaintiffs were only lessees of the land on which the crops were raised, a judgment requiring plaintiff, on tender of an amount designated, "to convey to defendant the right to maintain and operate said pumping stations as at present constructed," merely contemplated the conveyance by plaintiff of such rights as he had, and was not objectionable as requiring something not in plaintiff's power.

3. SAME—SPECIFIC AWARD FOR WATER.

In a suit against a city to prevent a continuing trespass, and for damages caused by the lowering of the water level under defendant's land by the establishment of defendant's pumping station near the land, an award of fee damages was not objectionable on the ground that it was an award of the depreciation in value of the remainder of the property after the water was taken from it, but contained no award for the water; since plaintiff had no property, but only an usufructuary right in the water, and fee damages included the deprivation of this right.

4. SAME—RIGHT TO JURY TRIAL—WAIVER.

Plaintiff's realty was injured by the lowering of the water level caused by defendant city's adjacent pumping stations, and plaintiff sued in equity to prevent a continuing trespass, and for damages, and recovered fee damages; the judgment providing that on payment plaintiff should convey to the city the right to maintain the pumping station. *Held*, that by suing in equity, instead of at law, for the trespasses, plaintiff waived his constitutional right to condemnation proceedings and a jury trial.

5. SAME—NOTICE.

The award of fee damages was not objectionable on the ground that the city had given plaintiff no notice of an intention to acquire their land; the action proceeding on the theory that the city's acts constituted a trespass, and plaintiff not being entitled to notice of an intention to commit a trespass.

---

¶ 1. See Damages, vol. 15, Cent. Dig. §§ 119, 124.

**6. SAME—DRIVEN WELLS.**
  A city, having authority to secure a water supply, does not exceed its
  authority by using driven wells instead of those sunk in some other
  manner.

Appeal from special term, Kings county.

Separate suits by August Westphal and another, John H. Diek-
mann, and Frederick Hiller against the city of New York. From
judgments (70 N. Y. Supp. 1021) for plaintiff in each suit for a part
of the demand, plaintiffs appeal. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS,
WOODWARD, and HIRSCHBERG, JJ.

Charles Coleman Miller, for appellants.
R. Percy Chittenden (James McKeen, on the brief), for respondent.

WOODWARD, J. These actions, involving the same general
questions, were tried together, resulting in judgments in favor of the
plaintiffs, at special term. The plaintiffs, who asked for the equi-
table interposition of the court to prevent a continuing trespass upon
the part of the defendant, under the rule established in the cases of
Smith v. City of Brooklyn, 160 N. Y. 357, 54 N. E. 787, 45 L. R. A.
664, and Forbell v. City of New York, 164 N. Y. 522, 58 N. E. 644,
51 L. R. A. 695, 79 Am. St. Rep. 666, are not satisfied with the
amount of the recovery, and appeal from the judgments entered in
their favor. The evidence received in this case was to a consider-
able extent such as was condemned in the case of Reisert v. Same,
69 App. Div. 302, 74 N. Y. Supp. 673, but there appears to have
been no objection to its admission, and we are to determine whether
the court below has determined the questions upon the evidence be-
fore it in accord with the established principles of equity jurispru-
dence.

The plaintiff Westphal is the owner of five and one-half acres of
market garden land, located in Kings county, extending from the
old mill road to Spring creek, about 600 feet southwest of the Spring
creek pumping station of defendant's waterworks, and the learned
court at special term has found that "the operation, by the city of
Brooklyn, from 1894 to January 1st, 1898, and by the defendant
since that date, of the driven wells and pumping stations at Spring
creek station of defendant's waterworks, formerly owned by the city
of Brooklyn, and now owned by the defendant, lowered and lowers
the water table or level under plaintiff's land from where it formerly
was to a depth varying from said former level to about six feet below
it, according to whether said pumps are worked or not"; and that
"by reason of the operation of said pumping stations, and the lower-
ing of said water table, the plaintiff has been damaged, up to the
time of this trial, in the sum of $350; and the permanent damage
to the plaintiff's land is $300." Upon this appeal, Westphal urges
a variety of propositions which it seems proper to consider.

Although the court below has adopted the short form of decision,
as permitted by section 1022 of the Code of Civil Procedure, the ap-
pellant urges under point 1, that the finding that the lowering of the

ground water by the pumping station is not constant, and hence not generally destructive of crops, is against the evidence. We do not think the court has made any finding which accords with the inferences suggested by the appellant. So far as the decision indicates anything, it is that the pumps, when in operation, lower the water level about six feet, and it may properly be assumed that these pumps are operated during the dry season, and that they would lower the water at that time to the extent of six feet below the normal level; but the learned court evidently based his estimate of the damages to be sustained upon the proposition that, conceding the level to be lowered six feet, it did not operate to do the damages claimed by the plaintiff. It is well understood that where the water is too far below the surface to be affected by capillary attraction, and this does not exceed 18 inches, it is of no value to growing plants, while the evidence of the plaintiff, which is unsupported, and which the court was not bound to believe, is to the effect that the normal water level under the larger part of his possessions was from one to two feet below the surface. There was other evidence read into the case from another action, which might justify the conclusion that the water level was much lower than this, and the whole case suggests a desire to establish damages, rather than to vindicate justice, which justified the court at special term in refusing to accept as true all of the testimony adduced. We do not find in the case evidence which warrants us in concluding that the learned court at special term was not acting within the legitimate sphere of its duty in reaching the conclusion stated in the decision, and which is criticised under point 1 of plaintiff's brief. The same remarks apply to the contention raised under point 2. It was for the plaintiff, not alone to produce testimony, but to bring before the court convincing evidence, of the damages alleged to have been sustained. The court is not, more than a jury would be, obliged to believe improbable and interested statements of a witness, and we are clearly of opinion that the evidence does not support the contentions of the plaintiff. It is probably true that the plaintiffs, as the owners or lessees of the several pieces of property involved, had a right to plant their land year after year with any kind of crop which it might please them to cultivate, but if it was true that the land was known to be unfitted for the growth of celery, and it was well adapted to some other crop, it cannot be that a court of equity would be bound to allow the plaintiff for the crops which he might have raised with the water, without taking into consideration the question of whether the land might not have been used profitably in other directions. If the land was only fit for celery with the water, and was unfit for any other crop without it, there might be some grounds for claiming large damages; but, so far as we know, the land may have been actually benefited by the drainage; the land may have been much better adapted to the growth of some other line of vegetables, and if this was the case the plaintiff would have no claim in equity for the damages he had sustained by reason of a failure of his celery crop, if he knew at the time that this crop would be a failure, and that a different crop would yield him a good return.

Whatever the plaintiff's rights might be as a mere matter of law, when he appears in a court of equity he is bound to do equity; he cannot go on, regardless of experience and known facts, and increase the amount of his damages, and then expect that they will be fully reimbursed to him. These observations are peculiarly applicable to those who have been renting from year to year, and, when it is remembered that a large portion of the alleged losses occurred at a time when it was not believed that there could be any recovery, it tends strongly to discredit testimony to have witnesses declare that, in spite of the known conditions, they went on renting farms, and inviting a certain loss of their labor and capital. Taking this view of the question, we cannot concur in the contention of the plaintiff that the damages awarded were wholly inadequate, and are unsupported by the evidence. The damages awarded, it seems to us, are fully as large as the creditable evidence warrants.

The plaintiff urges that the form of the judgment, requiring the plaintiffs, upon the tender of the amount designated, to convey to the defendant "the right to maintain and operate the said pumping stations as at present constructed," etc., is not within the power of the plaintiffs, but it does not seem profitable to consider this question. The plaintiffs may convey the rights which they have, and this is all that is contemplated by the judgment, and the further suggestion that the award of fee damages to the plaintiff Westphal is in reality an award of the depreciation in value of the remainder of their property after the water is taken from it, but includes nothing for the water, is equally without merit. The plaintiff has no property right in the water, as such; he does not own the particles of which it is formed. His property in the water is in its use while it remains upon or under his lands; it is the usufructuary right, the same as in flowing water. He has the right to the use of the water, but he has no property in the water as such; and the measure of his damages, as we held in the case of Reisert v. City of New York, 69 App. Div. 302, 74 N. Y. Supp. 673, is the decreased fee or rental value of the property with the water withdrawn. We will assume, without discussion, that the defendant has a right to receive the conveyance of the rights of the various plaintiffs.

It is urged, however, that the plaintiff Westphal's constitutional rights have been invaded, because it is alleged that the plaintiffs were given no notice of the city's intention to acquire their property; and, second, that the right to the appraisal of the property by a jury or by three commissioners has been denied to the plaintiff. The theory on which this class of actions is maintained is that the defendant is a trespasser. This being true, the plaintiff has a remedy by an action at law for each day's trespass, and, if he chooses to go into a court of equity, he must be deemed to have waived his constitutional right to a condemnation proceeding. It is well settled that a party may waive a rule of law or a statute, or even a constitutional provision enacted for his benefit or protection, where it is exclusively a matter of private right, and no considerations of public policy or morals are involved, and, having once done so, he cannot subsequently invoke its protection. The rule of law which the courts will enforce in that

class of cases, where the parties have substantial rights, and where objection is duly and seasonably made, will be deemed to have been waived by the plaintiff when he brings the action, and by the defendant if he pleads generally, and goes to trial without insisting upon the benefits secured to him by the constitution and the laws. Sentenis v. Ladew, 140 N. Y. 463, 466, 35 N. E. 650, 37 Am. St. Rep. 569, and authorities there cited.

It was not necessary that the city should give the plaintiff notice of an intention to commit a trespass; the plaintiff's right of action depends upon the fact that the city did commit a trespass without the consent of the plaintiff; and the latter, having invoked the aid of a court of equity, is bound to satisfy the conscience of the court if he is to receive any compensation. It is not sufficient that there should be some evidence to support the plaintiff's claim; there must be evidence to judicially convince the court of the justice of his claim, and, so far as we are able to gather the facts from the record, the learned court at special term has awarded all of the damages which can be justified, and has properly refused to grant an absolute injunction.

The suggestion that the city has no authority to use driven wells is hardly of importance enough to be seriously considered. The method of securing water is purely an incident to the larger purposes of the municipality in procuring a water supply, and is necessarily included in the general powers delegated to the city for this main purpose. The further objections are rather too technical to engage the attention of this court, and we reach the conclusion that the judgments appealed from should be affirmed.

The judgments appealed from should be affirmed, with costs. All concur.