## PROVIDENT BUILDING & LOAN ASSN v PEKAREK et

Ohio Appeals, 8th Dist, Cuyahoga Co

No 14975. Decided Feb 17, 1936

H. B. Howells, Cleveland, and C. A. Riemenschneider, Cleveland, for plaintiff.

Philip F. Weiss, Cleveland, W. C. Graves, Cleveland, and R. S. Holland, Cleveland, for defendants.

Ansel S. Curtis, Cleveland, and A. Kollin, Cleveland, amici curiorum.

**OPINION**

By TERRELL, J.

The trial court considered that it would be inequitable to allow foreclosure and sale because there might be a possible deficiency judgment against the defendants. So it provided a scheme whereby, as a condition to the right of sale on foreclosure, the plaintiff should credit upon the judgment the apparent value or so-called intrinsic value which was found by the court. It would thus result that instead of defendants being charged with any deficiency judgment the plaintiff itself should suffer this loss. This appears to be one-sided equity. There seems to be no logical reason why defendant should be relieved of the debt without paying the full amount thereof. Defendants do not question the honesty of the debt, there is no question of unfair dealing raised, or sharp practice, or fraud between the parties. In fact, the court seems to have allowed considerations of sympathy for the misfortune of defendants to occupy the place of sound judgment. The depression has caused misfortune to all of us. The record does not justify a finding that plaintiff is the cause of this depression. It would not be equitable to require the plaintiff to reduce its judgment without receiving money therefor.

If the property had doubled in value by reason of prosperous times, it would not be equitable to require the debtor to pay twice the amount of the debt. The contractual relation of the parties is that of debtor and creditor. The creditor did not invest in the real estate as a purchaser. If the real estate enhances in value it should not be required to bear the loss. Equity considers the rights of each party. Should plaintiff's premises unfortunately be visited by a fire, which destroyed the building on said premises, it would not be equitable to require the mortgagee to reduce the amount of its mortgage debt. The reduction in value of real estate by reason of the economic times is just the same as the reduction of value by fire. We may sympathize with the owner because of the loss by fire, but a court of equity cannot use its sympathy to transfer the owner's loss to the mortgagee by reducing the mortgage debt.

Equity follows the law.

We read in Pomeroy's Equity Jurisprudence that equity follows the law in the sense of obeying it, conforming to its general rules and policies, whether contained in the common or statute law. This principle was clearly stated by Lord Chancellor Talbot in the following passage:

"There are instances indeed where a court of equity gives a remedy where the law gives none; but where a particular remedy is given by law and that remedy bounded and circumscribed by particular rules, it would be very improper for the court to take it up where the law leaves it and to extend it further than the law allows."

From the earliest times in the history of jurisprudence in Ohio there has been provided a proper system of procedure for foreclosure and sale under mortgages. As early as "Anonymous", I Ohio, 235, the Supreme Court laid down the rule that in mortgage foreclosures the mortgaged premises must be appraised before sale.

Prior to the adoption of the Code in 1853, Ohio Chancery Courts respected the policy of the statutes governing sales on execution, following the procedure therein outlined in foreclosure of mortgages.

In the case of Wiles v Baylor, 1 Ohio, 509, decided in 1824, the following syllabus appears:

"The policy of requiring lands, sold under execution for debt, to be valued, pervades the legislation of the state, and has prevailed for many years. In directing the sale of real estate, especially where the legal title is to pass, a court of chancery is not at liberty to adopt a different policy."

In Coe v Railway, 10 Oh St 375, it is stated that it is still the policy of the state that there shall be an appraisement in a proceeding for the sale of real estate under a mortgage foreclosure, and the court has no discretion, though the ascertainment of the value be peculiarly difficult.

A statute of 1810 provided that if the mortgaged premises did not sell for a sum sufficient to satisfy the judgment, then the residue of said judgment so remaining unsatisfied shall be deemed and taken to be a debt of record, upon which judgment and execution could be had.

Reedy v Burgert, 1 Ohio, 157.

Sec 11582, GC, which has been in force for over eighty years, provides that when a mortgage is foreclosed, a sale of the property shall be had.

Other sections of the statute provide substantially that the sale shall be had as upon execution, that the property shall be appraised and not sold for less than two-thirds of the appraised value.

Thus it will be seen, from the foregoing citations, that from the earliest times to the present day there has been a settled policy and law of the State of Ohio governing the procedure for the sale of mortgaged premises upon foreclosure, and this procedure has been apparently adequate to meet the ends of justice. One will search in vain through the reported cases in Ohio during the past century for any case where any judge, in the exercise of equity powers, upon a decree of foreclosure, has placed a

condition that there be a waiver of a deficiency judgment.

If equity follows the law, it seems that the trial court should have followed the established law of Ohio as herein above indicated and granted a decree of foreclosure and order of sale without imposing said condition upon it.

But, it is argued, that §11588 GC, merely states "when a mortgage is foreclosed a sale shall be ordered," and, therefore, the Chancellor may grant a foreclosure or withhold it under such conditions as he may dictate. The mere statement of this postulate is to assert a doctrine not in accord with the modern theory of equity.

The Chancellor's powers are not so broad as those of an autocrat. His powers in this advanced and enlightened age of jurisprudence are somewhat limited.

It is true that in the early formative days of equity jurisprudence, when the Chancellor was the keeper of the King's Conscience, equity was administered according to the conscience of the individual chancellor and with other considerations he probable gave weight to sympathetic feelings. As equity progressed it became guided by fixed principles and precedents.

"In spite of the origin of equity in England as a prerogative jurisdiction administered from an ecclesiastical point of view and notwithstanding the function which it still discharges as a corrective and complement of the common law, it is not to be supposed that modern equity continues to be what it once may have been—merely an arbitrary exercise of power according to the dictates of the Chancellor's conscience."

16 Ohio Jurisprudence, page 15.

An illuminating article upon the progress of equity is found in Pomeroy's Equity Jurisprudence, Article 47, as follows:

"It is very certain that no court of chancery jurisdiction would at the present day consciously and intentionally attempt to correct the rigor of the law or to supply its defects by deciding contrary to its settled rules in any manner, to any extent, or under any circumstances beyond the already settled principles of equity jurisprudence. * * * Nor would a Chancellor at the present day assume to decide the facts of a controversy according to his own standard of right and justice, independently of fixed rules,—he would not attempt to exercise the arbitrium boni viri; on the contrary, he is governed in his judicial functions by doctrines and rules embodied in precedents,

and does not in this respect possess any greater liberty than the law judges."

Applying these principles to the case at hand wherein the debt is admitted, default in said debt and mortgage for a long time is admitted, adequate procedure for the sale of the premises is provided by statute, this procedure has been followed for the past one hundred years, what is there left for the Chancellor to do under these circumstances but grant a judgment and decree of foreclosure and order of sale of said premises.

It would be a gross abuse of judicial discretion under the circumstances of this case for the Chancellor to withhold a decree of foreclosure and order of sale. It would be an arbitrary action to devise any scheme whereby a plaintiff would be required under these circumstances to forego a deficiency judgment.

In a mortgage foreclosure action a personal money judgment on a note is not merged with the order of sale on foreclosure into one judgment.

There is no apparent reason then, why, if there is not sufficient money made on the execution of the order of sale to satisfy the money judgment, plaintiff should be required to grant any further credit thereon or cancel it entirely.

Some cases from Wisconsin, New Jersey and Missouri have been called to our attention by counsel for defendants where courts in mortgage foreclosure cases have placed a minimum sale price upon the property, below which it could not be sold. Counsel for plaintiff calls to our attention that, in the states where such cases have been decided, there is no provision made by statute for appraisal and sale at a minimum price.

Where no provision is made by statute for appraisal of the land and sale at a minimum price, in mortgage foreclosure cases it is apparently within the discretion of a court of equity in conducting a judicial sale to fix a minimum price of sale. But there is not now nor has there been for the past one hundred years in Ohio any necessity for a court of equity to fix a minimum sale price upon land in mortgage foreclosure. During all that time the law of the State of Ohio has amply provided sufficient procedure by statute for such a sale.

Federal statutes do not provide for appraisement and minimum bid, and so the Federal Courts have fixed a minimum sale price and also some state courts have done likewise where no such statutes exist.

In Blair v St. Louis, 25 Federal, 232, the court says:

"In many states foreclosures of mortgages are attended with an appraisement and the property must bring a certain portion of that appraised value, and so we, in harmony with that idea, think an upset price should be fixed."

Among the cases cited by counsel for defendant where an upset price or similar conditions have been attached to a decree of foreclosure, are the following:

Suring State Bank v Giesse, 246 NW 556 (Wis.)

Palmer v Bankers Trust, 12 Fed. (2d) 747.

Blair v St. Louis, 25 Fed. 232.

Provident v Camden, 177 Fed. 854.

Sage v Central, 99 U. S. 334.

Federal Trust v Lowenstein, 113 N. J. Equity, 200.

Young v Weber, 117 N. J. Equity, 242.

In the jurisdictions where these cases just cited have been decided, there is no proper or adequate procedure by statute fixing appraisal and minimum sale price.

The courts of some of the states where there are no such statutes have even refused to attach any such conditions to the decree of foreclosure in mortgage foreclosure cases.

In the case of Kenby v Huntington, 170 Atl. 526, (Maryland) the court says:

"Unfavorable market conditions affecting the price obtainable at a mortgage foreclosure sale do not warrant a court of equity in making confirmation of a sale to the mortgagee conditional upon the waiver of a right to a deficiency judgment."

There is called to our attention the case of Adams v Spillards, 61 SW (2d) 686-7, where the court of last resort of Kansas held an act of the Legislature unconstitutional, which provided that "the plaintiff shall not be entitled to a decree of foreclosure until and unless plaintiff shall file a stipulation in said cause that he will bid the amount of the debt, interest and costs."

The court held that such a law impaired the obligation of existing mortgage contracts.

In Federal Land Bank v Wilmarth, 94 A.L.R. 1338, the Supreme Court of Iowa held:

"Equity will not refuse to foreclose a mortgage because a financial depression has abnormally depreciated the market value of the mortgaged property and made money

more valuable than it was at the time the loan was made." * * *

"Under all the cases presented for consideration it uniformly has been said that the fluctuations in value will not relieve the debtor. Equity cannot arbitrarily grant relief in the face of the Constitution of the United States and the laws thereof to which the state is subject. Moreover, in view of the contract provision of the Federal Constitution, the state could not in any event adopt a policy which would repudiate debts, destroy contracts or deny the means to enforce such obligation." (Citing Home Building and Loan v Blaisdell, 290 U. S. 398).

In the case of Local Building and Loan v Martz, (Okla.) U. S. Law Week Vol. 3, No. 10, page 6, the court says:

"The court does not have power to condition confirmation of sale to a mortgagee on a release of a deficiency judgment notwithstanding the depressed condition of real estate."

Holding the views herein above expressed and following the logical conclusions reached in the cases herein ·cited, we believe that the courts in Ohio should adhere to the accepted and long established practice and procedure in judicial sales in foreclosure of mortgages, and refuse to condition the right of foreclosure upon the plaintiff waiving a deficiency judgment, or crediting an upset price of the mortgaged land upon said judgment, or upon any other similar conditions.

Decree in foreclosure and order of sale without such condition is awarded to the plaintiff. O.S.J.

LIEGHLEY, PJ, concurs in judgment.

LEVINE, J, concurs in decree of foreclosure but dissents from order providing for immediate sale of the property.

## OPINION

By LEVINE, J.

I concur in the decree of foreclosure rendered by the majority of this court, but dissent from the order which provides for an immediate sale of the mortgaged property.

There are certain basic principles enunciated by the authorities from which there can be no departure. Legislative bodies, either state or national, are without power to enact laws impairing the obligations of contracts. Neither can a court of equity render a decree impairing the obligation of a contract. It follows as a matter of course that the decree of the trial court which in substance imposes a condition to a decree of foreclosure that the plaintiff, the creditor, allow a substantial credit to the debtor on the indebtedness is without effect, as the same if enforced would impair the obligations of a written contract. I am of the opinion, however, that a court of equity in the exercise of sound discretion, may impose reasonable conditions and make the same part of its decree. The various provisions found in the General Code dealing with the sale of property under a decree of foreclosure have reference to proceedings which take place after the decree of foreclosure is rendered by the court. They do not affect the sound discretion of the court rendering the decree to impose reasonable conditions. The law contemplates a sale of the property mortgaged after a decree of foreclosure, at a public sale with competitive bidders. There is evidence in the record as to the market conditions of real estate. The courts will take judicial notice of the economic conditions prevailing in this country and elsewhere. They are unprecedented and without parallel.

I agree with counsel for defendant that it is not a case of mere fluctuations of market values or temporary depressions that sometimes affect localities, It is safe to say that for a long time no market whatsoever existed for real estate. There can be no public sale with competitive bidding when there are no bidders. The inevitable result is that the creditor takes the property at his own price and when the price at which he takes it is not sufficient to cover the indebtedness, a deficiency judgment is rendered against the mortgagor for the balance. The debtor, or mortgagor, not only loses the mortgaged property and whatever investment by way of money or improvements he has put into it, but also finds himself facing a personal judgment for the balance.

Every governmental agency is straining itself to the utmost to relieve the crisis which now exists. I see no reason why courts of equity cannot assist to the extent of their power in this program of relief. Courts of equity are resorted to in order to obtain extraordinary relief, or relief which the law courts cannot afford.

From time immemorial courts of chancery have refused equitable relief when the granting of such relief would prove unduly oppressive. Likewise, courts of chancery have imposed conditions and made the same as part of their decree in order to guard against oppression. To allow an immedi-

ate sale of the property in the case at bar would result in a virtual confiscation of the debtor's property. The court may well say, we shall postpone the date of sale until there can be in fact and in truth a public sale with competitive bidders.

The various moratorium laws passed by the various state legislatures are merely declarations of equitable principles. In my opinion this power to postpone the date of sale was lodged in courts of equity as an inherent power in order to prevent oppression and injustice. The moratorium laws passed by the various state legislatures are merely cumulative. They are not exclusive.

The courts have taken judicial notice of the depressed state of the real estate market. The courts must likewise take judicial notice of the gradual improvement in the real estate market. The concensus of opinion seems to be that we have reached the bottom of the depression and are now ascending the upward grade. We are nearing a time when values will be re-established and when a public sale will have competitive bidders who bid in good faith with a true intention of acquiring the property.

It is my opinion that the date of sale should be postponed at least for a period of six months in the hope that market conditions will so far improve that the sale of the property ordered by the court will be a true sale and not a pretended sale; when competitive bidders will compete in good faith and when the price realized will nearly equal the true value of the property.

When one peruses the history and progress of equity jurisprudence he will soon discover that a substantial part of its efforts was devoted to protecting the debtor against the voraciousness of the creditor. It invented various devices to thwart the creditor from gaining an undue advantage. In my opinion this court has full power to impose reasonable conditions and make the same part of its decree. This court is without power to cancel the indebtedness or any part of it, but when with full knowledge of prevailing conditions it is bound to conclude that there can be no substantial compliance with the law which calls for a public sale with competitive bidders, it may order the date of sale postponed until such a time when the market for real estate will be so far improved so as to permit of a substantial compliance with the provisions of the law.

I realize that this power of a court of equity to impose conditions and make the same part of its decree of foreclosure is purely discretionary. It is doubtful wheth-

er this discretion can be interfered with by a reviewing court. We are sitting here as a court of chancery. We are required by tradition and precedent to put conscience into our decree.

My conclusion is:

1. That the plaintiff is entitled to a decree of foreclosure.

2. That the court is without power to cancel the indebtedness or any part of it because such a decree would impair the obligations of a contract which neither legislature nor courts are empowered to do.

3. We are possessed of sound discretion to impose reasonable conditions and make the same part of our decree.

4. The law contemplates a public sale of the mortgaged property with competitive bidders bidding at the sale. In the present market conditions there can be no substantial compliance therewith as there are no bidders.

5. In the case at bar the most helpful condition to be imposed in order to prevent confiscation of the property and consequent oppression of the debtor is to insert a condition and make the same part of the decree, postponing the date of sale for a period of six months.