479 P.2d 169

**W. W. JARVIS, for and on behalf of himself and other persons or legal entities constituting a class too numerous to be named as parties, Petitioners,**

**v.**

**The STATE LAND DEPARTMENT, a Department of the State of Arizona, Andrew L. Bettwy, State Land Commissioner of the State of Arizona; and CITY OF TUCSON, a municipal corporation, real party In interest, Respondents.**

**No. 9488.**

Supreme Court of Arizona,

In Banc.

Dec. 28, 1970.

Elmer C. Coker, Phoenix, and Donald C. Cox, Eloy, for petitioners.

Gary K. Nelson, Atty. Gen., by Peter C. Gulatto, Asst. Atty. Gen., Phoenix, for respondent, State Land Commission.

Lewis C. Murphy, Tucson City Atty., by Richard H. Day, Asst. City Atty., and Robert O. Lesher, Sp. Asst. City Atty., Tucson, for respondent, City of Tucson.

Evans, Kitchel & Jenckes, by Burton M. Apker, Phoenix, amici curiae, American Smelting and Refining Co.

Chandler, Tullar, Udall & Richmond, Tucson, amici curiae, Anaconda Co. and Boyd Land and Cattle Co.

Twitty, Sievwright & Mills, Phoenix, amicus curiae, Banner Mining Co.

Fennemore, Craig, von Ammon & Udall, Phoenix, amici curiae, Duval Corporation and Duval Sierrita Corporation.

STRUCKMEYER, Vice Chief Justice.

This is an original petition by W. W. Jarvis and others, requesting that respondents, the City of Tucson and the State Land Department, show cause why an injunction heretofore issued under the original jurisdiction of this Court, Constitution of Arizona, Article VI, § 5, A.R.S., should not be strictly enforced. The petition is a continuation of the dispute Jarvis v. State Land Department, City of Tucson, 104 Ariz. 527, 456 P.2d 385, wherein petitioners, who cultivate 33,000 acres of land in the Avra-Altar Valleys within the Marana Critical Ground Water Area by means of irrigation wells, invoked the original jurisdiction of this Court to obtain an injunction against the City and the State Land Department.

Prior to 1969, Tucson drilled six wells in the Avra Valley for the purpose of pumping and transporting water to its customers both within and without the City, a distance in excess of fifteen miles. Our injunction directed the State Land Commissioner to cancel rights of way across State lands for transportation of the waters from the Avra-Altar Valleys to Tucson or elsewhere. In our written decision we said that upon application to this Court accompanied by such circumstances as would permit the legal pumping and transportation of ground water, our injunction would be modified or dissolved as the facts warranted.

Petitioners in the present action now assert that the City of Tucson, although not transporting water to Tucson proper, has continued to pump water from its wells and has conducted water to areas both within and without the Marana Critical Ground Water Area in violation of the Court's injunction. Tucson acknowledges that it is pumping water from its wells and is delivering water to an installation known as Ryan Field within the Marana Critical Ground Water Area and to certain residences outside the Marana Critical Ground Water Area but within the Avra-Altar Valleys' drainage area. Several questions which it is believed pertinent have been propounded by petitioners in order that there be a final disposition of the dispute between the parties.

In this Court's second decision in Bristor v. Cheatham, 75 Ariz. 227, 255 P.2d 173 (1953), the doctrine of prior appropriation of ground waters was rejected and the doctrine of reasonable use was adopted. In our first decision in this case we pointed out that in *Bristor* it was alleged that the plaintiffs had been the owners since 1916 of certain wells from which they had supplied themselves with water for domestic purposes. In 1949 the defendant sank a number of large irrigation wells which by their operation sucked the ground water from under the plaintiffs' lands, thereby destroying plaintiffs' supply for their wells. Defendant transported the water a distance of three miles where he developed agricultural lands not theretofore irrigated. We held in *Bristor*, which holding was repeated in our first decision here, that this was not a reasonable use of ground waters.

In our first decision here, we also held that the American rule of reasonable use permitted percolating water to be extracted for the beneficial use of the land from which it was drawn. We emphasized this aspect of the doctrine of reasonable use by requoting from *Bristor* that part of the decision in Rothrauff v. Sinking Spring Water Co., 339 Pa. 129, 14 A.2d 87, to the effect that the modern decisions are nearly harmonious in holding that a property owner may not convey waters off the lands from which they are pumped if the wells of another are thereby damaged or impaired. This limitation on the use of ground waters has the overwhelming support of American precedent. Percolating waters may not be used off the lands from which they are pumped if thereby others whose lands overlie the common supply are injured. *See* Midway Irrigation Co. v. Snake Creek Mining & Tunnel Co., 271 F. 157 (CCA 8th, 1921), aff'd, 260 U.S. 596, 43 S.Ct. 215, 67 L.Ed. 423 (1922); Katz v. Walkinshaw, 141 Cal. 116, 70 P. 663 (1902), on rehearing, 74 P. 766 (1903); Cohen v. La Canada Land & Water Co., 151 Cal. 680, 91 P. 584 (1907); Burr v. Maclay Rancho Water Co., 154 Cal. 428, 98 P. 260 (1908); City of San Bernardino v. City of Riverside, 186 Cal. 7, 198 P. 784 (1921); Koch v. Wick, 87 So.2d 47 (Fla.1956); cf. Willis v. City of Perry, 92 Iowa 297, 60 N.W. 727 (1894); cf. Barclay v. Abraham, 121 Iowa 619, 96 N.W. 1080 (1903); Schenk v. City of Ann Arbor, 196 Mich. 75, 163 N.W. 109 (1917); Bernard v. City of St. Louis, 220 Mich. 159, 189 N.W. 891 (1922); cf. Stillwater Water Co. v. Farmer, 89 Minn. 58, 93 N.W. 907 (1903), and 99 Minn. 119, 108 N.W. 824 (1906); Erickson v. Crookston Waterworks, Power & Light Co., 100 Minn. 481, 111 N.W. 391 (1907); Meeker v. City of East Orange, 77 N.J.L. 623, 74 A. 379 (1909); Crane v. Borough of Essex Fells, 67 N.J.Super. 83, 169 A.2d 845 (1961), aff'd, 36 N.J. 544, 178

A.2d 196 (1962); Smith v. City of Brooklyn, 18 App.Div. 340, 46 N.Y.S. 141; 54 N.E. 787 (1897); Westphal v. City of New York, 34 Misc. 684, 70 N.Y.S. 1021 (1901), aff'd, 75 App.Div. 252, 78 N.Y.S. 56, aff'd, 177 N.Y. 140, 69 N.E. 369 (1901), rearg. den. 177 N.Y. 570, 69 N.E. 1133; Forbell v. City of New York, 164 N.Y. 522, 58 N.E. 644 (1900); Dinger v. City of New York, 101 App.Div. 202, 92 N.Y.S. 1120, aff'g. 42 Misc. 319, 86 N.Y.S. 577 (1903), aff'd 182 N.Y. 542, 75 N.E. 1129 (1905); Hathorn v. Natural Carbonic Gas Co., 194 N.Y. 326, 87 N.E. 504 (1909); Rouse v. City of Kinston, 188 N.C. 1, 123 S.E. 482 (1924); Volkmann v. City of Crosby, 120 N.W.2d 18 (N.D.1963); Canada v. City of Shawnee, 179 Okl. 53, 64 P.2d 694 (1937); City of Enid v. Crow, 316 P.2d 834 (Okl.1957); cf. Ross Common Water Co. v. Blue Mountain Consol. W. Co., 228 Pa. 235, 77 A. 446 (1910); Horne v. Utah Oil Refining Co., 59 Utah 279, 202 P. 815 (1921); Glover v. Utah Oil Refining Co., 62 Utah 174, 218 P. 955 (1923).

Such waters can only be used in connection with the land from which they are taken. *See* Sloss-Sheffield Steel & Iron Co. v. Wilkes, 231 Ala. 511, 165 So. 764 (1936), reaff'd on sub. app., 236 Ala. 173, 181 So. 276 (1938); Sycamore Coal Co. v. Stanley, 292 Ky. 168, 166 S.W.2d 293 (1942); Finley v. Teeter Stone, Inc., 251 Md. 428, 248 A.2d 106 (1968); Smith v. City of Brooklyn, 18 App.Div. 340, 46 N.Y.S. 141, 54 N.E. 787 (1897); State ex rel. Ericksen v. McLean, 62 N.M. 264, 308 P.2d 983 (1957); Bayer v. Nello L. Teer Co., 256 N.C. 509, 124 S.E.2d 552 (1962); Volkmann v. City of Crosby, 120 N.W.2d 18 (N.D.1963); Canada v. City of Shawnee, 179 Okl. 53, 64 P.2d 694 (1937); Rothrauff v. Sinking Spring Water Co., 339 Pa. 129, 14 A.2d 87 (1940); Silver King Consol. Mining Co. v. Sutton, 85 Utah 297, 39 P.2d 682 (1934); Evans v. City of Seattle, 182 Wash. 450, 47 P.2d 984 (1935).

■ Tucson questions whether it may pump water from its wells and transport the water so pumped through its pipelines to lands which lie within the watershed but outside the Marana Critical Ground Water Area. From what has been said concerning the American rule of reasonable use, the answer to Tucson's question is, of course, that it may not.

"There is no apparent reason for saying that, because defendant is a municipal corporation, seeking water for the inhabitants of the city, it may therefore do what a private owner of the land may not do. The city is a private owner of this land, and the furnishing of water to its inhabitants is its private business. It is imperative that the people of the city have water; it is not imperative that they secure it at the expense of those owning lands adjoining lands owned by the city." Schenk v. City of Ann Arbor, 196 Mich. 75, 163 N.W. 109, at 114 (1917).

■ We also pointed out in our first decision in this case that the Avra-Altar Valleys are a part of a critical water area, being included within the Marana Critical Ground Water Area. For the reason that a critical ground water area is a ground water basin or subdivision "not having sufficient ground water to provide a reasonably safe supply for irrigation of the cultivated lands in the basin at the then current rates of withdrawal," we held that additional users would necessarily deplete the supply of the existing users. Consequently, the conveyance of ground waters off the lands on which wells in the Avra Valley are located impairs the supply of the other land owners within the critical area.

■ Tucson argues that since by statute A.R.S. § 45–301 et seq. only new irrigation or drainage wells in critical areas having a capacity of more than 100 gallons per minute are prohibited, the Legislature must have intended to permit pumping for municipal purposes without restriction. But the illegality of the use of ground water is not dependent upon whether the Legislature has not forbidden the sinking of wells as a source of supply to be used for municipalities. The right to exhaust the common supply by transporting water for use

off the lands from which they are pumped is a rule of law controlled by the doctrine of reasonable use and protected by the constitution of the state as a right in property.

Tucson questions whether on equitable principles it should be prohibited from delivering water to Ryan Field. Ryan Field is an airfield which we understand has existed at least as long as petitioners have engaged in agriculture. Its lands overlie the Avra-Altar water basin and geographically it lies within the Marana Critical Ground Water Area so as to entitle it to withdraw water from the common supply for all purposes except agriculture. Tucson should not be prohibited from delivering water to Ryan Field for lawful purposes since the Ryan Field supply is from the common basin over which it lies and from which it could legally withdraw water by sinking its own wells for domestic purposes.

Tucson's delivery of water to purchasers within the Avra-Altar drainage area but outside the Marana Critical Ground Water Area is, however, without equitable sanction. There is no indication in the record that these customers of Tucson overlie the water basin so as to come within the principle applicable to Ryan Field. Until Tucson can establish that its customers outside the Marana Critical Ground Water Area but within the Avra-Altar Valleys' drainage areas overlie the water basin so as to be entitled to withdraw water from it, there are no equities which will relieve it of the injunction heretofore issued.

Finally, petitioners request this Court to determine whether Tucson by acquiring lands in cultivation in the Avra-Altar Valleys may remove the ground water used upon those lands to other areas contrary to the doctrine of reasonable use. The State Land Department joins petitioners in requesting that the first Jarvis decision be augmented by clarifying the rights of the parties in this respect. Tucson also asks the Court to pass upon a like question although in somewhat a different form. Amici Curiae, however, oppose the request of the parties that the Court expand on the legal rights in question.

We think, however, that the problem is critical to municipalities in Arizona and so justifies our consideration even though not strictly embraced within the limits of the issues of the original lawsuit. As indicated, Jarvis' action invoked this Court's equitable jurisdiction. We issued the injunction but stated that we reserved the right to modify or dissolve upon application accompanied by a showing of circumstances as would permit the legal pumping and transportation of ground water by the City. Our decree was consistent with the almost universal rule that a court of equity when requested will determine all the equities connected with the main subject of the suit and grant all the relief necessary to a complete adjustment of the litigation:

"It is a principle of equity that it does justice completely and not by halves. When a bill had been brought in good faith to obtain relief within the jurisdiction of the court, the bill may be retained to do complete justice with reference to the subject matter, even though upon the facts the specific relief prayed for cannot be given, and a bill would not lie for the sole purpose of obtaining the specific relief that is given. Reynolds v. Grow, 265 Mass. 578, 580, 164 N.E. 650; Booras v. Logan, 266 Mass. 172, 175, 164 N.E. 921; Degnan v. Maryland Casualty Co., 271 Mass. 427, 430, 431, 171 N.E. 482; Peerless Unit Ventilation Co., Inc., v. D'Amore Construction Co., 283 Mass. 121, 125, 126, 186 N.E. 280; Geguzis v. Brockton Standard Shoe Co., 291 Mass. 368, 371, 197 N.E. 51; Somerville National Bank v. Hornblower, 293 Mass. 363, 368, 199 N.E. 918, 104 A.L.R. 1107." Fields v. Othon, 313 Mass. 115, 46 N.E.2d 546, at 547 (1943).

It is also frequently stated as a maxim of equity that equity follows the law. By this is meant that equity obeys and conforms to the law's general rules and policies whether the common law or statute law. *See*, e. g., Provident Building &

Loan Ass'n. v. Pekarek, 52 Ohio App. 492, 3 N.E.2d 983 (1936). By A.R.S. § 45–147 the relative value of uses in appropriable waters has been fixed by the Legislature as first, domestic and municipal uses, and second, irrigation and stock watering. The creation of such a priority clearly evidences a legislative policy that the needs of agriculture give way to the needs of municipalities. Hence, we hold that the decree in this case will be modified if Tucson purchases or acquires the title to lands within the Avra-Altar Valleys which are now cultivated and uses the water which would have been used in cultivating such lands as a source of supply for its municipal customers. Tucson may withdraw an amount equal to the annual historical maximum use upon the lands so acquired.

The record in this case compels the conclusion that underlying the Avra-Altar Valley floor is a basin of gently percolating waters. It is our decision, therefore, that if Tucson acquires lands within the Avra-Altar Valleys overlying the Marana Critical Ground Water Area it may withdraw water from the basin for municipal uses to the same extent as water previously withdrawn for use on those lands. The water withdrawn may be either from wells on the lands so acquired or from Tucson's presently existing wells, but in no event may water be withdrawn both for use on the lands and transported off the lands for municipal purposes. Any withdrawals shall be through water metering devices available for inspection by all parties to this litigation or their agents, and the devices will indicate the current rates of withdrawal together with the quantity of water withdrawn monthly. Tucson will furnish quarterly records of its water withdrawals to the Office of the State Land Commissioner where they will be held available for examination by the public.

The injunction heretofore issued will be continued in effect except insofar as it has application to the installation known as Ryan Field.

LOCKWOOD, C. J., McFARLAND and HAYS, J., and WILLIAM W. NABOURS, Judge Superior Court, concur.

NOTE: The Honorable JESSE A. UDALL, J., having disqualified himself, the Honorable WILLIAM W. NABOURS, Judge of the Superior Court of Yuma County, was called to participate in his stead.