**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ERNEST EUGENE BRADY, husband;
MARRITTA KAY BRADY, wife; JAMES
DEAN BRADY, husband; FLOSSIE
MARIE BRADY, wife,
        *Plaintiffs-Appellees,*

            v.

ABBOTT LABORATORIES, an Illinois
corporation (including Ross
Products Division of Abbor
Laboratories, improperly named),
        *Defendant-Appellant,*

            and

ABC ENTITIES, I-X; JOHN/JANE
DOES, I-X; ROSS PRODUCTS, a
Division of Abbott Laboratories,
Inc.,

        *Defendants.*

No. 04-15257

D.C. No.
CV 01-0886 JAT

ORDER

Filed April 25, 2006

Before: Jerome Farris, A. Wallace Tashima, and
Consuelo M. Callahan, Circuit Judges.

Order;
Dissent by Judge Hawkins

---

## ORDER

The panel has voted to deny the petition for panel rehearing. Judge Callahan votes to deny the petition for rehearing en banc and Judges Farris and Tashima so recommend.

The full court was advised of the petition for rehearing en banc and a judge of the court called for a vote on whether to rehear the matter en banc. On such vote, a majority of the nonrecused active judges failed to vote in favor of en banc rehearing.

The petition for panel rehearing and the petition for rehearing en banc are denied.

---

HAWKINS, Circuit Judge, dissenting from the denial of rehearing en banc:

We should have taken this case for en banc review because it presents an important question of state law that should have been certified to the Arizona Supreme Court: whether the "reasonable use" doctrine articulated in *Bristor v. Cheatham*, 255 P.2d 173 (Ariz. 1953) ("*Bristor*") has been modified, in certain drought-sensitive areas of Arizona, by the enactment of the 1980 Arizona Groundwater Code ("the Code").[1]

*Bristor* established that a landowner owed no duty to an adjacent landowner for the extraction of groundwater, even where there is demonstrable damage to a neighbor's land, as long as the water taken is reasonably used on the overlying land.[2]

---

[1]The commentators assume that it has. *See, e.g.*, Patrick and Archer, A Comparison of State Groundwater Laws, 30 Tulsa L.J. 123, 132 (1994) ("The 1980 Act replaced the traditional reasonable use doctrine that permitted virtually unlimited use of groundwater."); Paula Smith, Coercion and Groundwater Management: Three Case Studies and a "Market" Approach, 16 Envtl. L. 797, 850 (1986) ("For areas *outside AMAs*, groundwater may be withdrawn and used for 'reasonable and beneficial use.' ") (emphasis added).

[2]Although certification of the state law issue was the primary reason to have en banc review, a compelling argument exists that even if *Bristor* applies to this dispute, the district court correctly determined that Abbott's offsite dumping of extracted groundwater, in violation of the very permit

In 1980, the Arizona Legislature, recognizing the state's expanding population and limited water supplies, enacted a comprehensive regulatory scheme which dramatically altered the groundwater landscape. The Code significantly modified the rights of landowners to remove groundwater underlying their land. In certain drought-sensitive areas (Active Management Areas or "AMA's"), landowners may not even begin to extract groundwater from beneath their land without permission from the Director of the Arizona Department of Water Resources.

This case arose in just such an area. Abbott Laboratories ("Abbott") applied for and obtained a permit to withdraw groundwater from beneath its land and then proceeded to exceed the very restrictions placed upon that withdrawal. Abbott's actions so substantially depleted the surrounding water table as to destroy nearly 300 pecan trees growing on neighboring land. Those neighbors filed suit in the Arizona courts and, had the dispute remained there, there would be no need to ask the Arizona Courts about the issue. Abbott, however, exercised its removal rights, meaning the question would be decided in federal court.

The matter proceeded to a bench trial before a district judge well-versed in Arizona law. Brushing aside Abbott's arguments that *Bristor* permitted the "reasonable use" it had made of the groundwater and specifically noting Abbott's violation of the very permit that allowed the withdrawal of groundwater in the first instance, the district court found for the orchard

---

needed to extract the water in the first place, took Abbott's actions outside *Bristor*'s protection. *See Jarvis v. State Land Department*, 479 P.2d 169, 171-72 (Ariz. 1970) ("Percolating waters may not be used off the lands from which they are pumped if thereby others whose lands overlie the common supply are injured. *Such waters can only be used in connection with the land from which they are taken*.") (Citations omitted; emphasis added); *see also Farmers Investment Company v. Bettwy*, 558 P.2d 14 (Ariz. 1976).

owners, assessing both compensatory and punitive damages on Abbott.

On appeal, Abbott convinced a three-judge panel that *Bristor* applied to the dispute, notwithstanding the enactment of the Code. The panel apparently found it unpersuasive that the Arizona Supreme Court, while not specifically holding that the Code modified the common law as expressed in *Bristor* and its progeny, clearly seems to have assumed it did:

> We similarly approach the state law parties' argument that federal reserved rights holders may be adequately protected against groundwater depletion by the 1980 Groundwater Management Code, *which restricts application of the reasonable use doctrine and mandates conservation measures in some parts of Arizona.* For example, within "active management areas," it prevents the drilling of new wells or increased pumping, and requires permits for changes in use. See A.R.S. § 45-411 et. seq.

*In re Gen. Adjudication of All Rights to Use Water in Gila River Sys. & Source*, 989 P.2d 739, 749 n.13 (Ariz. 1999) (emphasis added).

Arizona law permits federal courts to certify state law questions to the Arizona Supreme Court,[3] and this was a perfect opportunity to do so. Even assuming the question to be an open one, the conflict between what *Bristor* allows and what the Code restricts[4] is so apparent that the Arizona courts

---

[3]A.R.S. § 12-1861.

[4]*Compare* A.R.S. § 45-518 (A)(4) (requiring [Arizona Dep't of Water Resources] director to determine "dewatering [removal of groundwater] will not harm any person permitted to withdraw or use groundwater under this title") *with Bristor*, 255 P.2d at 238 ("If [groundwater] is diverted for the purpose of making reasonable use of the land from which it is taken, there is no liability incurred to an adjoining owner for a resulting damage").

should be allowed to say what the law of the state is — not what a federal appeals panel thinks it might be. A healthy respect for the federal-state relationship, as Justice Ginsberg reminded us in *Yniguez v. Arizonans for Official English*, 520 U.S. 43, 62-63 & n.18 (1995), demands no less.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2006 Thomson/West.