181 So. 276

SLOSS–SHEFFIELD STEEL & IRON CO.
v. WILKES et al.

6 Div. 175.

Supreme Court of Alabama.

March 10, 1938.

Rehearing Denied May 26, 1938.

174

mingham, and Huey & Welch, of Bessemer, for appellant.

Bradley, Baldwin, All & White, E. L. All, and Kingman C. Shelburne, all of Bir-

Howard H. Sullinger and McEniry & McEniry, all of Bessemer, for appellees.

FOSTER, Justice.

This is a second appeal in this case. See 231 Ala. 511, 165 So. 764, 770, 109 A.L.R. 385.

■ After it was reversed, and on the second trial, the complaint was amended so as to charge the wrongful act against both defendants, not against one as the employer by reason of the wrongful act of the other as employee. And though the complaint charged a joint act, it was also several, and judgment for one and against the other was not violative of any rule of law. See cases cited under headnote 21 on former appeal. Section 5720, Code. That was the result of the second trial, and no error appears in that respect.

There were two counts on which the trial was had. Count R related to the fall which occurred on May 4th in mine No. 1; count S related to the fall on June 15, 1932, in mine No. 2. Both counts allege that defendants negligently caused or allowed the roof of the mine to fall or cave to such an extent that as a proximate consequence thereof, on to wit, August 28, 1932, the surface of plaintiff's land, which adjoined that in which the fall occurred, was cracked and disturbed and caused to sink and subside, and springs and wells on plaintiff's land caused to go dry, and the water diverted and retarded, to his damage.

■ Objection to those counts was made by demurrer, and urged on this appeal, and is that they do not allege a breach of duty shown to exist by defendants to plaintiffs. Of course that is an essential of every action at law. Ordinarily, a negligent injury is a breach of duty. Southern Ry. Co. v. Arnold, 162 Ala. 570, 50 So. 293; 45 Corpus Juris 1045, note 83.

■ But every negligent act from which injury results is not a negligent injury nor a breach of duty. Whether it is so, depends upon whether the injury is the proximate result of the negligent act. As a rule, a complaint which alleges the occurrence of a negligent act by defendant, and that, as a proximate result of it, plaintiff was injured in person or property, a breach of duty is shown providing a cause of action. Louisville & Nashville R. R. Co. v. Kelly, 198 Ala. 648, 73 So. 953.

■ If the complaint alleges facts which show that the injury was not the proximate result of the negligence, or such a presumption obtains from the facts alleged, no duty is shown, notwithstanding a general averment that it was the proximate result. Appellant claims that to be the status of this complaint, because it avers that plaintiff's land, claimed to have been damaged, was situated adjoining that in which the falls occurred, and not the surface over and above it.

From that circumstance the complaint is not rendered insufficient to show a breach of duty, unless the damage could not have been, as alleged, proximately caused by the falls, said to have been negligent. If one operating his mine is wholly immune under all circumstances from such damage to an adjoining owner occasioned by his negligence, there is no cause of action, because the damage is not the proximate result of his act. But if under any circumstances he owes a duty of due care to such owner in respect to such matters, the allegation that the damage was the proximate result of defendant's negligence will be attributed to a breach of that duty, the contrary not appearing; so that the question of the sufficiency of the complaint in this respect calls for a consideration of the law applicable to the whole subject of this litigation, and this is proper and necessary also to determine whether the evidence is sufficient to support or justify a verdict for plaintiff in any aspect of the controversy.

■ On the former appeal we made a careful study of the law pertaining to this subject, and as a result of that study we declared a rule here applicable as follows: "If defendant is conducting any sort of operations to which its land is adapted in an ordinary and careful manner, and as a consequence percolating water is drained, affecting the surface owner's water supply, either of that or adjoining land, no liability for his damage exists. But if the waters are drained without a reasonable need to do so, or are willfully or negligently wasted in such operation in a way and manner as that it should have been anticipated to occur, and as a proximate result the damage accrued to the surface owners so affected, including adjoining landowners, there is an actionable claim, as held by what we think are the best considered cases."

To have a better understanding of what is there stated, we quote as follows from 22 R.C.L. page 140: "Those who are negligent are held in law to know the usual ef-

fect of ordinary natural conditions and forces on a negligent act or omission, and to have contemplated the appearance and the effect of such conditions and forces on their negligence or on its proximate results, and to be liable in damages for the natural and probable proximate results of the negligence. If the natural condition or force that affects the negligent act or omission is unusual or extraordinary, the negligent party will not, in general, be held to have know of or contemplated it, unless the circumstances of the particular negligent act or omission are such that the negligent party should have known of or contemplated the probable appearance and effect of such unusual or extraordinary natural condition or force. If the injury was caused by some extraordinary or unusual natural force or condition that could not have been foreseen, or that would have caused the injury if there had been no negligence, the negligence is not the proximate cause of the injury."

■ But it is not necessary that every detail of damage which is the ordinary and natural result shall be contemplated. Alabama Power Co. v. Bass, 218 Ala. 586, 119 So. 625, 63 A.L.R. 1; 22 R.C.L. 125, section 12, note 8; 17 Corpus Juris 751; Birmingham Water Works Co. v. Martini, 2 Ala.App. 652, 56 So. 830. For illustration, we refer to our cases which hold that one who negligently conducts blasting operations on his own land is liable for consequential as well as direct damage to his neighbor or his property adjoining and proximately affected by such operations. Bessemer C., I. & L. Co. v. Doak, 152 Ala. 166, 44 So. 627, 12 L.R.A.,N.S., 389; Birmingham Ore & Mining Co. v. Grover, 159 Ala. 276, 48 So. 682; Lehigh Portland Cement Co. v. Donaldson, 231 Ala. 242, 164 So. 97.

■ There may be evidence sufficient to justify a reasonable inference that defendant negligently supported the roof of its mine where the falls occurred at a time when it should have contemplated that such falls would thereby be caused and that percolating water would thereby probably be loosed and drained; and that this did occur, from which as an ordinary and natural consequence the surface of plaintiff's land adjoining the mine in which the fall occurred and the surface waters upon the same were injured or depleted, though such ultimate detail of result may not have been anticipated. Such evidence would, we think, make out a prima facie case and be within the complaint.

The complaint is therefore not subject to demurrer for the failure to show the breach of a duty to plaintiff. The duty alleged to be breached is not negligently to cause injury and damage to plaintiff's property.

■ But to sustain a verdict for plaintiff in this case, since there was no trespass, there must be sufficient evidence to justify a finding: (1) That defendant was negligent in the manner in which its mine roofs were supported, as they were left when mining operations ended, or some further duty in that connection was thereafter breached. (2) That at the time the mining operations were conducted where the roofs fell or at the time when some neglect of duty in respect to such roof supports may have occurred, defendant anticipated, or was under a duty to do so, that some sort of substantial damage would naturally result to plaintiff's adjoining property, although it may not have anticipated just such detail of damage to it as did occur. (3) That plaintiff's said property was in fact damaged in value or usefulness as the natural result of neglect by defendant in respect of its failure to support the roofs properly.

That is in substance and effect an analysis of the questions which we stated on the former appeal, but without the emphasis now placed, because the issues then did not directly require us to declare the law applicable to the duty of the defendant company, irrespective of its relation to the defendant Immler. We think the trial court carefully and accurately followed that interpretation of the law which we then announced, and clearly instructed the jury in that respect. A further discussion of the legal questions is unnecessary.

■ But we are confronted with an interpretation of the evidence. With respect to the first point, we think that a tendency of the evidence shows that when defendant ceased to operate at the points involved fifteen or twenty years before the falls, there may have been left a sufficient amount of ore supports to hold up the roof. But some five, six, or seven years before the falls those ore supports were depleted by what is called robbing them; cutting down their size by using the ore. This does not seem to be unusual when the heading is not again to be used for any purpose. Artificial supports of stone cribs and timbers

are frequently used to aid the ore pillars, but only when the location is being used for some purpose. After its use is abandoned, it does not seem to be customary to use such supports, and the ore pillars are cut down to a minimum. In such condition, it is not unusual for roof falls to occur in such abandoned workings, and the supports are such as that they may be anticipated.

■ This tendency of the evidence is sufficient to sustain a finding by the jury of negligence by defendant in supporting the roofs in those places so as to prevent them from falling. But whether such negligence is actionable, and is a breach of duty to plaintiffs, depends on a consideration of whether damage of a substantial nature to plaintiffs' property as a result of such falls should have been anticipated, and did in fact follow as a proximate consequence.

The fall of the roof in mine No. 1 occurred on May 4, 1932, which released a deposit of percolating water above, and caused it to fall into the mines at 4,000 gallons per minute at the first. The area of the fall was approximately 8 acres and 4,000 feet to the nearest point of plaintiffs' property here in question, and from one to two miles to the springs and wells alleged to have been affected on plaintiffs' land, which constituted the chief cause of complaint and claim of damage to its value. The fall in mine No. 2 occurred June 15, 1932, comprising approximately 20 acres, releasing about 200 gallons a minute, and substantially the same distance from plaintiffs' land. They both are supposed to have caused a break in the bottom of the same stratum above, but not immediately overlying the roof of the mine. This stratum is called Fort Payne chert. The lime in this stone at this point has leached out and become porous, holding a vast amount of percolating water. The floor of this stratum is approximately 100 feet above the roof of the mine separated from it by shale, which is ordinarily impervious to the percolation of water. There is a stratum of Fort Payne limestone overlying immediately the Fort Payne chert. The lime has not leached out in it to such an extent. Above that and extending directly to the surface above is shale, which is ordinarily impervious to the percolation of water, though that also has disintegrated for some distance below the surface holding water which does not reach the lower strata.

From the roof of the mine to the surface above at the point of the first fall in mine No. 1, the distance is about 900 feet in all. And from the point of the second fall, in No. 2, nearer the entrance of the slope and up the mountain side, it is about 750 feet to the surface above.

The Fort Payne chert stratum has leached out to a point about 500 feet deeper in the valley than the location of the first fall. The formation extends across the valley and under the property of plaintiff. But it is not there water bearing. A core there indicates no water-bearing stratum lower than a sandstone seam about 400 feet under the surface and 1,200 feet over the ore seam. Between the ore seam and sandstone, under plaintiffs' property, are shale and Fort Payne limestone, all of which is impervious to water percolations to any appreciable extent. This sandstone seam extends toward the mine fall area to a point approximately 1,200 feet from it when it outcrops. Plaintiffs' land where the wells and springs were affected, are approximately one and one-half miles from the mine falls.

■ The theory of the experts who know the geological formations is that the falls could not have affected the water supply on plaintiffs' land.

The defendant is bound to take note of what is thus known by experts and of common knowledge, and of technical theories as applied to the conditions. From cores taken out by drills in that district, the geological formations and water-bearing strata were known.

Nothing in that connection points to the fact that roof falls in defendant's mines there located would tend to affect the water supply on plaintiffs' lands from any available source, or to cause cracks in its surface. Technicians still maintain that they have not done so. But whether they could or not, no sort of knowledge was available by which it should have been anticipated.

Defendant was not bound to know more than others best informed then knew, nor to anticipate an occurrence which was outside any theory which was deducible from known facts both as to the geological formation and scientific information as well as common knowledge and experience.

■ From no theory of the evidence was the jury authorized to infer that defendant was chargeable with anticipating any serious damage to plaintiffs' land by reason of such roof falls. We think it was

due to have had the affirmative charge as requested.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.