54 So.2d 673 (1951)
LABRUZZO et ux.
v.
ATLANTIC DREDGING & CONST. CO., etc.
Supreme Court of Florida, Division B.
October 5, 1951.
Rehearing Denied November 20, 1951.
*674 Walton & Walton, J.V. Walton and Kate L. Walton, all of Palatka, for appellants.
H.E. Merryday, Palatka, for appellee.
ROBERTS, Justice.
This case is here on an appeal from a final judgment entered on demurrer to plaintiffs' second amended declaration after plaintiffs declined further to amend.
The facts alleged by plaintiffs are in substance as follows: Continuously since 1918 plaintiffs have owned and occupied as their homestead a parcel of land in Putnam County on the east bank of the St. Johns River. From time out of mind  until interrupted by the acts of defendant  a spring surfaced and erupted on plaintiffs' land, at the rate of 207 gallons a minute, and flowed on across plaintiffs' land in a surface stream to the river. The defendant owned land adjacent to and upstream from that of plaintiff, both parcels being bounded on the west by the St. Johns River. In 1946 the defendant began the excavation of a wide and deep cut into the bank of the river on its own land for the purpose of constructing a yacht basin, using the spoil as fill dirt to make a private landing strip for airplanes. The excavation extended some eight or twelve feet below river level; and in order to have a dry hole to work in, the defendant built a coffer dam and operated large pumps within its confines, thus withdrawing therefrom the waters that leaked, seeped or flowed into the excavation.
The plaintiffs alleged in the first count of their declaration "that the waters forming said spring flowed in an underground stream through and under the said lands of defendant and through and under the lands of plaintiffs to the point where they erupted and surfaced; * * * that it is a well-known and readily ascertainable fact that the area within which the properties of the parties are situate is largely underlaid by a limestone strata, which is a water bearing strata that is commonly pierced and riddled with underground caverns and water courses, all of which was or should have been known to the defendant prior to commencing the excavation and was definitely and certainly learned and known soon thereafter; that, notwithstanding its knowledge of the existence and location of plaintiffs' spring and of the limestone strata underlying the lands of the parties; and notwithstanding the defendant knew or should have known that the underground stream or strata which fed the plaintiffs' said spring might and probably did flow through and under its lands, * * * the defendant, in the course of its said excavation work and deep below the natural surface of the land, so carelessly and negligently excavated dirt and rock and pumped water from the hole it was digging that it broke into and interrupted and diverted the natural flow of the underground waters that theretofore, from time out of mind, had fed plaintiffs' spring; * * * that the defendant with knowledge of all these things continued to construct its said yacht basin and so carelessly and negligently dug and excavated that it permanently and completely interrupted and diverted the natural flow of said waters to plaintiffs' spring and destroyed the same, * * *" to the damage of plaintiffs.
In their second count the plaintiffs alleged, in addition to the above, "that defendant, in excavating the said yacht basin, located and found the underground limestone channel of the waters of plaintiffs' spring and recognized and identified the waters from said underground channel as the waters of plaintiffs' spring and knew and admitted to plaintiffs that the underground stream whose channel it so located and identified was in fact the underground stream that surfaced as plaintiffs' said spring; that, at such time, defendant had not permanently damaged and injured the channel of said underground stream or permanently *675 diverted and interrupted its flow, but that the natural course and usual flow of said underground stream was interrupted and diverted only when the defendant caused its great pumps to work to give it a dry hole for further excavations; that defendant was and is an engineering company, experienced in dredging and excavating; that defendant, after locating the said underground stream, as aforesaid, acknowledged to plaintiffs that such underground stream was the spring of plaintiffs' and assured plaintiffs that it would do no permanent damage to plaintiffs' spring in its further excavations, and would restore the same to its usual, natural channel, and agreed and undertook to save plaintiffs and plaintiffs' said spring harmless from any injury or damage occasioned by the said excavation and to recompense plaintiffs at the rate of $100 a month for their loss of the use and value of the waters of their spring for the months during which the flow thereof was prevented by the pumping and excavation; and thereafter with full knowledge and proceeding at its own risk, the defendant so carelessly and negligently dug and excavated and pumped water from the basin it was constructing that the flow of the said underground water was permanently and completely diverted and interrupted from its natural channel and its natural surfacing on plaintiffs' lands," to the injury of plaintiffs.
The defendant's demurrer to plaintiffs' second amended declaration was grounded principally on the fact that it affirmatively appeared in plaintiffs' declaration that there were no surface indications of the existence of a well-defined subterranean stream feeding plaintiffs' spring; and that, in law, the source of such spring should be considered percolating waters, the flow of which had been interrupted by defendant in the "lawful and reasonable use" of its property, so that under the "reasonable use" rule, it is contended, "plaintiffs have no cause of action or remedy against the defendant for the alleged acts and doings of the defendant." The defendant also alleged that the existence of the source of supply of the spring was discovered in the course of the excavation and not prior to its commencement, and that "it does not appear that the damage to plaintiffs' spring and property could have been avoided at a reasonable cost and by means which would permit the contemplated use of its property by defendant."
The plaintiffs and the defendant do not agree on the question which should be decided by this court; but the ultimate question is, of course, whether the plaintiffs stated a cause of action for damages.
At the outset, it should be noted that we are not here dealing with a problem involving a proprietary competition over the water itself  that is to say, there is no conflict here between the respective rights of persons to make competing proprietary uses of subterranean waters to which they both have access. In such cases, the present trend among the courts of this country is away from the old common-law rule of unqualified and absolute right of a landowner to intercept and draw from his land the percolating waters therein; and the later cases hold that the right of a landowner to subterranean waters percolating through his own and his neighbor's lands is limited to a reasonable and beneficial use of such waters. Rothrauff v. Sinking Spring Water Co., 339 Pa. 129, 14 A.2d 87; Nashville, C. & St. L. Ry. v. Rickert, 19 Tenn. App. 446, 89 S.W.2d 889; Canada v. City of Shawnee, 179 Okla. 53, 64 P.2d 694; Restatement of Torts, Vol. IV, page 344. See also the cases collected in the annotation beginning at page 1398 of 55 A.L.R.
It is pointed out by the annotator at page 1404 of 55 A.L.R. that "Practically all the cases in which this rule of correlative rights or reasonable use has been applied were cases in which percolating water was being extracted from land for the purpose of sale at a distance, for use in supplying water to cities and towns, or in irrigating other lands than those in which such water was found," which are generally held to be unreasonable uses of percolating water. See also Canada v. City of Shawnee, supra.
In the instant case, however, we are concerned with an interference with plaintiffs' use of the spring on their land, caused by conduct of the defendant not involving *676 a competing use of water and in which the effect on the subterranean water is only incidental to the defendant's use of its land. Obviously, then, the rule of "reasonable use," as engrafted upon the old common-law rule of absolute and unqualified ownership of percolating waters, insofar as the proprietary beneficial use of the water is concerned, has no application here where we are concerned with the proprietary use of land, and in which the water is only incidentally affected. Under such circumstances, even at common law, a person was subject to liability for interference with another's use of water, either for (1) an intentional invasion when his conduct was unreasonable under the circumstances of the particular case, or (2) an unintentional invasion when his conduct was negligent, reckless or ultrahazardous. Restatement of Torts, Vol. IV, Section 849, and Sections 822-840. In the absence, then, of surface indications, an interference with subterranean water is, of course, unintentional and damnum absque injuria unless the conduct resulting therein is negligent, reckless or ultrahazardous. Wheatley v. Baugh, 25 Pa. 528, 64 Am.Dec. 721; Haldeman v. Bruckhart, 45 Pa. 514, 84 Am.Dec. 511; Collins v. Chartiers Valley Gas Co., 131 Pa. 143, 18 A. 1012, 6 L.R.A. 280, 17 Am.St.Rep. 791.
While there is no previous decision of this court exactly in point, this court has heretofore dealt with the general question involved, that is, a non-trespassory invasion of a person's water rights by another's use of his property in which the effect on subterranean water is only incidental.
Thus, in Cason v. Florida Power Co., 74 Fla. 1, 76 So. 535, 536, L.R.A. 1918A, 1034, in which the plaintiff alleged that defendant's construction of a dam had obstructed the flow of surface and percolating waters on plaintiff's land to his injury, this court said that "The property rights relative to the passage of waters that naturally percolate through the land of one owner to and through the land of another owner are correlative; and each landowner is restricted to a reasonable use of his property as it affects subsurface waters passing to or from the land of another." (The emphasis is supplied.) It was held that the question of whether the erection of the dam was a reasonable use by the defendant of its property, and whether the dam caused the injury, should have been submitted to the jury under appropriate instructions.
Again, in Pensacola Gas Co. v. Pebley, 25 Fla. 381, 5 So. 593, 595, involving the pollution by defendant of subterranean percolating waters feeding plaintiff's well, this court held that "The appellant gas company had the right to use the water in and about the gas-works as they pleased, but they had no right to allow the filthy water to escape from their premises, and to enter the land of their neighbors." And while this might have been considered an unintentional invasion of plaintiff's rights, since the pollution was of subterranean percolating waters, this court held that "the escape of the refuse filthy water [was] in itself an evidence of negligence on the part of the gas company."
On the question of negligence, the Pennsylvania court in Collins v. Chartiers Valley Gas Company, supra, was concerned with the liability of the defendant gas company for damages to plaintiff's well caused by the tapping of a vein of salt water by defendant in boring a gas well, which salt water rose and mingled with the fresh water and ruined plaintiff's well. The court said that there was evidence that the defendant should have known that the well would tap the salt water and thus injuriously affect surrounding water wells, and that this could have been prevented at a cost of from $50 to $250 in properly casing the well; and that the defendant, although notified of the injurious effect of the salt water, failed to remedy the matter. In reversing a verdict and judgment for defendant, the court said [131 Pa. 143, 18 A. 1013]: "* * * the use which inflicts the damage must be natural, proper, and free from negligence, and the damage unavoidable. * * * Negligence in this sense is the absence of such care and regard for the rights of others as a prudent and just man would and should have in the same situation. If the plaintiff showed that the injury was plainly to be anticipated, and easily preventable with reasonable *677 care and expense, he brought himself within the exception of all the cases from Wheatley v. Baugh, [supra] to Pennsylvania Coal Company v. Sanderson [113 Pa. 126, 6 A. 453, 57 Am.Rep. 445]".
Since the plaintiffs in the first count of their declaration have stated a cause of action, if at all, for an unintentional invasion of their water rights, the question then is: Do the allegations of such first count sufficiently show actionable negligence on the part of defendant? We do not think so. Even though the defendant knew or should have known that "the area within which the properties of the parties are situate is largely underlaid by a limestone strata, which is a water bearing strata that is commonly pierced and riddled with underground caverns and water courses," this does not mean that it is prohibited from making any excavations on its property on the off-chance that the supply of subterranean water to plaintiffs' spring might be diverted or obstructed. If the plaintiffs' spring was fed by percolating waters, it could not "plainly be anticipated" that the defendant's excavations and pumping activities would dry up the spring; and if the spring was fed by an underground stream, in a well-defined channel, such stream might have come in to plaintiffs' spring from any direction and not necessarily under the defendant's land. There being no showing, then, of "the absence of such care and regard for the rights of others as a prudent and just man would and should have in the same situation," the demurrer to the first count of plaintiffs' declaration was properly sustained.
As to the second count, the plaintiffs have alleged, in substance, that after defendant had initially and unintentionally interfered with the underground channel supplying water to the spring, and at a time when defendant had not permanently damaged and injured the channel of the underground stream or permanently diverted and interrupted its flow, "defendant * * * located and found the underground limestone channel of the waters of plaintiffs' spring and recognized and identified the waters from said underground channel as the waters of plaintiffs' spring and knew and admitted to plaintiffs that the underground stream whose channel it so located and identified was in fact the underground stream that surfaced as plaintiffs' said spring;" and that "thereafter with full knowledge and proceeding at its own risk," the defendant proceeded with its excavation and pumping activities, resulting in the complete and permanent diversion of the water from its natural channel and destroying plaintiffs' spring.
Since the allegations of plaintiffs' declaration must be taken as true on demurrer, it is clear that plaintiffs have stated a cause of action for an intentional invasion by defendant of their water rights, for which it must respond in damages if its conduct was unreasonable under the particular circumstances.
In Zimmerman v. Union Paving Co., 335 Pa. 319, 6 A.2d 901, 903, the facts were similar to those in the instant case, and were as follows: The defendant paving company began the excavation of a borrow pit near a spring and shortly observed that water was seeping through the side of the pit. The plaintiff, who piped water from the spring in such manner that his use thereof was dependent upon the force of gravity, warned the defendant of his rights in and to the water from the spring; but, despite such warning, the company continued the excavation, resulting in a lowering of the outlet of the spring and disrupting the plaintiff's piping system. The Pennsylvania court discussed the rules of liability as follows: "Ordinarily, when a spring depends for its supply upon filtrations and percolations through the land of an adjoining owner, and in the use of that land for lawful purposes the spring is destroyed, such owner, in the absence of malice and negligence on his part, is not liable for the damage occasioned, which is damnum absque injuria. * * * The reason upon which this principle is founded is that the subterranean sources of a spring are not perceptible, and damage caused by operations in their vicinity cannot usually be foreseen or avoided; where the existence, extent and location of such sources are unknown, any other rule would prevent the normal and legitimate developement *678 of the land. But if the act which causes the damage is persisted in after its effect has become apparent, or is merely wanton and of no use to the owner who performs it, or is attended by negligence, the law is otherwise. * * * If an injury to a neighbor's rights in wells or a water supply is plainly to be anticipated, and can be avoided by the exercise of reasonable care and at reasonable expense, a land owner is not exempt from all obligation to pay regard to the effect of his operations on subterranean waters. * * * Since, in the present case, defendant had ample warning of the likely result if the excavation was continued in the direction of the spring, it cannot, in the face of its wilful action after such notice, claim immunity from responsibility merely because the water diverted was of subterranean origin."
We think that the language of the Pennsylvania court, last above quoted, is equally applicable to the instant case, and that the defendant here should be held liable as for an intentional invasion of plaintiffs' water rights, if its conduct under all the circumstances was, in fact, unreasonable. The allegation of defendant in its demurrer that the interruption of the flow of water to the spring was occasioned by "the lawful and reasonable use by defendant of its property" states a mere conclusion not supported by any averment of facts, and the question of whether or not the defendant's conduct was, in fact, unreasonable under all the circumstances is for the jury to determine under appropriate instructions. Cason v. Florida Power Co., 74 Fla. 1, 76 So. 535, L.R.A. 1918A, 1034; Seaboard All Florida Ry. Co. et al. v. Underhill, 105 Fla. 409, 141 So. 306. As stated in the Restatement of Torts, Vol. IV, page 241: "The unreasonableness of intentional invasions is a problem of relative values to be determined by the trier of fact in each case in the light of all the circumstances of that case."
For the reasons stated, it was error to sustain the demurrer to the second count of plaintiffs' declaration, and the judgment appealed from is therefore reversed and the cause remanded for further proceedings consistent herewith.
Reversed and remanded.
SEBRING, C.J., and CHAPMAN and ADAMS, JJ., concur.