The plaintiffs, Gale Adams and Nick Armstrong, appeal from a summary judgment in favor of the defendant, John Lang. We affirm.
The issue is whether the law of nuisance or the "reasonable use" rule pertaining to ground water or percolating water applies to the facts of this case.
The facts as found by the trial court in its order dated September 7, 1988, are adopted in toto:
 "The plaintiffs are owners of tracts of land lying to the Southeast of defendant's land and along the same aquifer. The plaintiffs own artesian wells that supply water to their property for commercial use, i.e. watering cattle and pecan trees. The plaintiffs had owned their land for several years prior to the defendant's purchase of his land. Plaintiff Gale Adams testified he has two artesian wells on his property that flowed water at a rate of 8 gallons per minute. Plaintiff Nick Armstrong testified that his well produced 17 gallons per minute.
 "The defendant purchased his property in June of 1987. On his property there was an artesian well that produced 60 gallons of water per minute. This well was in existence at the time he purchased the property. In October 1987, the defendant began constructing catfish ponds on his property. In January 1988, the defendant drilled a second well and installed a pump in the well. In February 1988, both of [Plaintiff Gale Adams's] wells stopped flowing. Plaintiff [Gale Adams] testified that on February 18, 1988, both of his wells stopped flowing. Plaintiff Nick Armstrong testified about this period of time his well flow slowed down to only a pencil size flow. Plaintiff Gale Adams testified that *Page 91 
he talked with the defendant about the effect of his pumping, and [that] on February 23, 1988, the defendant agreed to stop pumping. After the defendant stopped pumping, plaintiff's wells returned to a normal flow.
 "On March 6, 1988, the defendant resumed pumping every day, and on March 9, 1988, plaintiff Gale Adams's wells stopped flowing. On March 20, 1988, defendant agreed to pump on alternate days, and on March 27, 1988, the plaintiffs' wells resumed flowing. The problem has continued to date, i.e., when the defendant pumps on alternate days the plaintiffs have enough water flow for their commercial needs.
 "James Walters, a professional engineer, testified that the water flowing beneath the defendant's property [is in] the same aquifer that supplies water to the plaintiffs' property. When the defendant pumps water it decreases the pressure of the water flowing through the aquifer. An artesian well is dependent on pressure to force the water up out of the ground, and when the pressure is decreased, the well flow decreases."
In August 1988, Adams and Armstrong sued Lang, requesting a temporary injunction, a permanent injunction, and damages. The trial court found that Adams and Armstrong suffered injury as a proximate result of Lang's pumping and, based on the law of nuisance, issued a preliminary injunction to prohibit Lang from pumping on a daily basis. However, on the motion of the defendant, the court discharged the injunction on October 28, 1988, finding that the law of nuisance was not applicable to the facts, because Lang's use of the water was "beneficial" to the use of his own land. The plaintiffs appeal from the subsequent summary judgment in favor of Lang.
Adams and Armstrong argue that Lang is liable under the law of nuisance. We disagree. This case involves a competitive use of ground water or percolating water, to which the "American rule" of "reasonable use" applies. The "reasonable use" rule was enunciated in Sloss-Sheffield Steel Iron Co. v. Wilkes,231 Ala. 511, 165 So. 764 (1936) (Sloss I), and Sloss-SheffieldSteel Iron Co. v. Wilkes, 236 Ala. 173, 181 So. 276 (1938) (Sloss II).[1] The Court in Sloss I stated:
 "[Where a landowner who] is conducting any sort of operations to which its land is adapted in an ordinary and careful manner, and as a consequence percolating water is drained, affecting the surface owner's water supply, either of that or adjoining land, no liability for his damage exists. But if the waters are drained without a reasonable need to do so, or are willfully or negligently wasted in such operation in a way and manner as that it should have been anticipated to occur, and as a proximate result the damage accrued to the surface owners so affected, including adjoining landowners, there is an actionable claim. . . . "
231 Ala. 511, 518, 165 So. 764, 770.
As explained in Henderson v. Wade Sand Gravel Co.,388 So.2d 900, 902 (Ala. 1980) (quoting Restatement (Second) ofTorts, § 857 (1979), pp. 256-57):
 " 'As between persons using the water on the underlying land, the American rule made no apportionment among users and gave no protection to their wells and springs. If the water was withdrawn for the purpose of making a beneficial use of or on the land from which it was taken, no liability was incurred for resulting harm to an adjoining landowner.' "
If an interference with the plaintiff's use of a spring on its land is caused by conduct of the defendant not involving a competing use of water, but involving a use in which the effect on the subterranean water is *Page 92 
only "incidental" to the defendant's use of its land, then the rule of "reasonable use" applies insofar as the proprietary "beneficial" use of the water, rather than the land, is concerned. Where the concern is the proprietary use of land, in which the water is only incidentally affected, the "reasonable use" rule does not apply. Henderson, supra, at 902. In the latter case, a defendant is subject to liability under the law of nuisance for interference with a plaintiff's use of water, "either for (1) an intentional invasion when his conduct was unreasonable under the circumstances of the particular case, or (2) an unintentional invasion when his conduct was negligent, reckless or ultrahazardous." Henderson, supra, at 903; Labruzzov. Atlantic Dredging Constr. Co., 54 So.2d 673, 676 (Fla. 1951); Restatement (Second) of Torts, § 849, §§ 822-40.
"[W]here a defendant diverts ground water from adjoining land as an incident to his use of his own land, and does not utilize the water itself, traditional nuisance law is more appropriately applied than rules governing competing uses of percolating waters." Henderson, supra, at 902. In this case, we are dealing with a " 'problem involving a proprietary competition over the water itself' " where there is a " 'conflict . . . between the respective rights of persons to make competing proprietary uses of subterranean waters to which they [all] have access.' " Henderson, supra, at 902 (quotingLabruzzo, supra, at 675). Applying the "reasonable use" rule, we conclude that the water was withdrawn for the purpose of making a beneficial use (catfish farming) of the water on Lang's land from which it was taken. Therefore, no liability was incurred for the resulting harm to the adjoining landowners, Adams and Armstrong.
Accordingly, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and HOUSTON, JJ., concur.
[1] We note that Sloss I and Sloss II were overruled by this Court in Henderson v. Wade Sand Gravel Co., 388 So.2d 900 (Ala. 1980). Henderson invalidated the rule in Sloss I and Sloss II
and applied the law of nuisance to a case involving the interference with a plaintiff's use (for consumption or subterranean support) of ground water by a defendant's diversion of that water incidental to some use of his own land. However, in this case, we are concerned with a beneficial use of the water to the defendant's land, rather than an incidental use as in Henderson.