These consolidated appeals involve a dispute between a municipality and a landowner over the reasonable use of a common aquifer, or bed of groundwater, that lies beneath the property of both. The specific question is whether the City of Linden can drill a permanent well on a one-acre tract of land it owns outside its municipal limits, and pump the water by pipeline at an estimated rate of 700 gallons per minute or 500,000 gallons per day to the City, which is located approximately 15 miles from the site of the well, for use by its consumers. In addition to the issue whether the City should be permitted to use the groundwater off of the lands from which it is taken, a secondary issue is whether the trial court erred in holding that the appellant must wait until the well is drilled and show actual harm to her water supply before she can apply for an injunction. However, before we can address either issue, we must determine whether previous litigation on this matter, Hereford v. City of Linden, 540 So.2d 49 (Ala. 1988), is a bar to this action under either the doctrine of res judicata or the doctrine of collateral estoppel.
For reasons discussed below, this action is not barred under the doctrines of res judicata or collateral estoppel. We hold that the City's proposed use of the water is impermissible under judicial interpretations of the rule of reasonable use, and we also hold that the trial judge erred in determining that the appellant must wait until her lands have been damaged before she can bring this action. Consequently, we reverse the judgment and remand the case.
In reaching this result, we distinguish the case of Adams v.Lang, 553 So.2d 89 (Ala. 1989), in which this Court, using the rule of "reasonable use," held that a landowner was not liable for damages to his neighbor's land resulting from the landowner's drawing water from under his land for beneficial use of the water on the land from which it was taken, in that case, to supply a catfish farm, even though this use depleted the water underneath the surface to such an extent that his neighbor's wells periodically ran dry.
 Facts
The City of Linden's water supply is contaminated with saltwater and is unfit for consumption. The City presently purchases the water it furnishes to its citizens from the City of Uniontown. In 1983, the City purchased a one-acre tract of land next to Judy Martin's farm. The City's sole purpose in purchasing the land was to drill a deep-water well from which it would extract water for use by its residents; the water would be carried 15 miles by pipeline to the city and would be used for any and all purposes, including resale. In 1983, the Alabama Department of Environmental Management ("ADEM") granted the City a permit to drill a test well. Following litigation, the well was drilled and samples were taken. It was then capped.
Judy Martin contends that the City's withdrawal of water from the proposed well will deplete or irreparably damage the water table beneath her farm. She sought to enjoin the drilling of the well, and she appeals from a summary judgment in favor of the City that denied her relief.
Mrs. Martin's former husband, Roy Hereford, and other adjacent landowners sued in 1984 to block the drilling of the test well. At that time, Hereford sought an injunction against the City based upon the American rule of "reasonable use." After that action was filed, ADEM revoked the permit it had issued to the City, and told the City that a permit was not required for a test well and that the City could proceed without one. Hereford and the other adjacent landowners appealed to this Court after the trial court refused to issue an injunction to stop the City from drilling the test well. InHereford v. City of Linden, supra, this Court reversed the circuit court's judgment and remanded the case on procedural grounds, concluding that ADEM had erred in revoking the permit for the test well. This Court stated that ADEM had the authority to monitor test wells under §§ 22-23-40 and -41, Ala. Code 1975, and held that the City had violated those statutes by proceeding without a permit. This Court ordered the trial court to enjoin the City from further activity until the City went through proper channels and obtained *Page 735 
a permit for the well. After the initial litigation and appeal, the City of Linden began to purchase water from the City of Uniontown. It obtained a permit for the test well, and once a permit was obtained, the City apparently drilled and later capped the test well after obtaining samples.
On March 30, 1991, ADEM issued a permit to the City allowing it to drill a permanent well on the land. After the Environmental Management Commission upheld the issuance of the permit on appeal, the appellant sued ADEM, the Environmental Management Commission, and the City of Linden in Montgomery Circuit Court, pursuant to § 41-22-20, Ala. Code 1975. The trial court took judicial notice of the record of the Hereford trial in its consideration of the parties' motions for summary judgment.
On October 24, 1994, the trial court entered a summary judgment for the City of Linden. The trial judge held that Mrs. Martin's action was premature, and that she must wait until the well has been drilled and she can show that she has suffered damages before she could file her action. The trial judge also held that the previous litigation between the parties did not operate as a bar to this action on the grounds of res judicata or collateral estoppel, and he instructed the City to cross appeal for the purpose of determining how the rule of "reasonable use" of groundwater applied under the facts in this case. Both Mrs. Martin and the City concede that the rule of "reasonable use" is applicable in this case.
 Res Judicata and Collateral Estoppel
The initial question this Court must address is whether the previous litigation concerning this matter, Hereford v. City ofLinden, 540 So.2d 49 (Ala. 1988), bars this action on the grounds of res judicata or collateral estoppel, as the City of Linden contends. This Court agrees with the trial court that neither doctrine is applicable under these facts.
Alabama law requires four elements for the application of the doctrine of res judicata. First, there must be a substantial identity between the parties in the prior and subsequent suits; second, both suits must involve the same cause of action; third, the prior action must have been decided by a court of competent jurisdiction; and fourth, the previous adjudication must have been on the merits of the case. If one of these elements is not present, then the doctrine of res judicata is not applicable. Ferguson v. Commercial Bank, 578 So.2d 1234,1236 (Ala. 1991).
The doctrine of collateral estoppel applies when the subsequent suit between the same parties is not based upon the same cause of action.
 "Requirements for collateral estoppel to operate are 1) issue identical to the one involved in the previous suit; 2) issue actually litigated in prior action; and 3) resolution of the issue was necessary to the prior judgment. [Citations omitted.] If these elements are present, the prior judgment is conclusive to those issues actually determined in the prior suit. [Citations omitted.]"
Adams v. Carpenter, 566 So.2d 236, 242 (Ala. 1990).
After examining the briefs and reviewing the arguments of both parties, as well as the record in Hereford, we hold that this action is not barred either by the doctrine of res judicata or by the doctrine of collateral estoppel. We note the following exchange, found in the record of the Hereford case, between the appellant's attorney, William G. McKnight, and the trial court:
 "Mr. McKnight: May I go one step further? That is one step. We raise another step to you that the ultimate issue as to whether or not this is unreasonable just for the City of Linden to pull water —
 "The Court: I am not going to get to that at this hearing.
". . . .
 "Mr. McKnight: As I am understanding it, then, we are not — the issue, ultimate issue is still going to remain before the Court, but that all we are here on today is the testing.
"The Court: Yes sir."
It is evident from this exchange during the Hereford
litigation that the trial court did not *Page 736 
rule on the ultimate issue presented in this case; the trial court merely decided the question there presented — whether the test well could be drilled after the permit had been revoked by ADEM. This Court, in deciding the appeal in theHereford case, reversed the judgment and remanded that case on procedural grounds only; we held that ADEM had erred in declaring that a permit was not needed to drill a test well, and we instructed the trial court to enjoin the City from proceeding until it had obtained such a permit. See Hereford, 540 So.2d at 51. Accordingly, there was no previous adjudication on the merits in the earlier case; therefore, the doctrine of res judicata is inapplicable. There has likewise been no previous resolution of the ultimate issue presented in this case; therefore, the doctrine of collateral estoppel cannot be invoked.
 Standard of Review
In reviewing a summary judgment, we apply the same standard as the trial court applies in determining "whether the evidence before the court made out a genuine issue of material fact" and whether the movant was "entitled to a judgment as a matter of law." Bussey v. John Deere Co., 531 So.2d 860, 862, 863 (Ala. 1988); Rule 56(c), A.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank ofBaldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989).
In addition, this Court must review the record in a light most favorable to the nonmovant (Mrs. Martin) and must resolve all reasonable doubts against the movant (the City).Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990).
 Timeliness of Mrs. Martin's Action
We must now turn our attention to the trial court's holding that Mrs. Martin's action was premature, and that she must wait until the permanent well has been drilled and she can show that she has suffered actual damage before requesting injunctive relief. We recognize that whether to grant or to deny injunctive relief rests in the sound discretion of the trial court and that the trial court's ruling will not be set aside unless that court has abused its discretion. Acker v.Protective Life Insurance Co., 353 So.2d 1150 (Ala. 1977). In addition, courts will not use the extraordinary power of injunctive relief merely to allay an apprehension of a possible injury; the injury must be imminent and irreparable in a court at law. United Services Auto. Ass'n v. Allen, 519 So.2d 506,508 (Ala. 1988). The primary reason for issuing an injunction is to prevent an "irreparable injury," i.e., an injury not redressable by an award of pecuniary damages in a court of law.Triple J Cattle, Inc. v. Chambers, 551 So.2d 280 (Ala. 1989). Accordingly, this Court must consider whether Mrs. Martin faces an irreparable injury in order to determine if her request for injunctive relief was premature. The City admits that if Mrs. Martin has proved an irreparable injury, then an injunction could be issued, but it contends that Mrs. Martin has failed to do so.
This Court concludes that Mrs. Martin has proved an imminent irreparable injury, and, therefore, the trial court's ruling that held that her action was premature constituted an abuse of discretion.
Mrs. Martin asserts, and we agree, that she has the right to bring this action under Ala. Code 1975, § 6-5-210, which reads:
 "The owner of realty having title downwards and upwards indefinitely, any unlawful interference with his rights, below or above the surface alike, gives him a right of action."
Also, Mrs. Martin contends, and we agree, that waiting until a permanent well has been drilled and a pipeline constructed at great expense to the City could substantially affect her chances of prevailing in a later action. The law states that where a public use of *Page 737 
water has been developed at great expense, landowners whose rights are adversely affected are not entitled to an injunction if, with knowledge of the development, they stood by without objection. See Barton v. Riverside Water Co., 155 Cal. 509,101 P. 790 (1909), 93 C.J.S. Waters § 100 (1956).
Several other reasons justify bringing the action at the present time. The proposed permanent well and pipeline will be an expensive undertaking, and this matter should be addressed before citizens' money is expended. This Court has noted that the contentions of the parties regarding the potential "drawdown effect" to Mrs. Martin's well as a result of the City's well, i.e., a potential lowering of the water table, forcing Mrs. Martin to drill a deeper well than the one she now has. We agree with the City that this potential harm is not sufficient to warrant the issuance of an injunction, because the appellant has an adequate remedy at law, and the City has offered to pay for any damage or new equipment and drilling needed by the plaintiff.
However, more significantly, Mrs. Martin offered expert testimony concerning more serious potential damage to both her land and her water supply if the City is allowed to continue to drill its well. This testimony was presented both in the first litigation on this matter (Hereford) and in the present action; the trial court in this action took judicial notice of the record in the Hereford case.
This testimony concerns the prevalence of saltwater contamination throughout much of the aquifers in Marengo County, which is one of the reasons the City needs a supply of freshwater. Very little is known about the location of the saltwater contamination front and its proximity to Mrs. Martin's well in the freshwater aquifer at issue here. A hydrologist at the Hereford proceeding testified that the large amount of freshwater drawn daily by this proposed well could cause the saltwater contamination front to move further into the freshwater of the aquifer; if this happened, it would be irreversible and would cause the freshwater aquifer to become more mineralized and eventually to be ruined for human consumption. This in turn could leave Mrs. Martin with no freshwater for either domestic or agricultural use upon her farmlands, effectively destroying much of the value of the land. Taken one step further, if the City continued to use the well, eventually the water supply could be ruined for the City as well, and one of the few sources for freshwater in the area would be destroyed. The City argues that the possibility of saltwater contamination of the freshwater aquifers in the area of Mrs. Martin's well is simply that, a possibility, and that it has offered expert testimony that any potential drawdown effect on the aquifers would be so small as to preclude saltwater contamination.
Viewed in a light most favorable to Mrs. Martin, the evidence shows that the potential contamination to Mrs. Martin's water supply would constitute an irreparable injury for which there would be no adequate remedy at law. Thus, this action was not premature. See Koch v. Wick, 87 So.2d 47 (Fla. 1956), in which the Florida Supreme Court held that the plaintiff in a similar factual setting did not have to wait until his well was damaged. See also Farmer's Investment Co. v. Bettwy, 113 Ariz. 520,558 P.2d 14 (1976); Higday v. Nickolaus, 469 S.W.2d 859
(Mo.App. 1971); and Jarvis v. State Land Dep't, 104 Ariz. 527,456 P.2d 385 (1969) (modified on other grounds, 106 Ariz. 506,479 P.2d 169 (1970)). Accordingly, the summary judgment entered for the City, holding that the plaintiff's action is premature, must be reversed and the cause remanded.
 The Rule of Reasonable Use
The trial court instructed the City to cross appeal for the purpose of determining how the rule of reasonable use should be applied under these facts. Both Mrs. Martin and the City concede that the rule of reasonable use applies in this case.
We have carefully studied the briefs of the parties, have reviewed the arguments of the parties, and have reviewed the applicable case law and treatises. We conclude that the proposed use of the water by the City of Linden is not permissible under the rule of "reasonable use."
The earliest Alabama cases dealing with disputes over water were land subsidence *Page 738 
cases, where a landowner mined the land to such an extent that the mining adversely affected the adjoining land or the water table. In these early cases, the neighbor might not have been able to obtain relief even though the neighbor's land was substantially damaged. See Sloss-Sheffield Steel Iron Co. v.Wilkes, 231 Ala. 511, 165 So. 764 (1936); and Sloss-SheffieldSteel Iron Co. v. Wilkes, 236 Ala. 173, 181 So. 276 (1938), overruled by Henderson v. Wade Sand Gravel Co., 388 So.2d 900
(Ala. 1980). In Henderson, this Court overruled those early cases and set out the history of the legal principles governing disputes over water rights. In that case, this Court reversed a judgment entered on a directed verdict for a quarry, whose incidental pumping activities had drained the groundwater from under the plaintiffs' land, opening sinkholes and causing the plaintiffs' houses to sink and break up. The Court discussed how the "English Rule" of capture, pursuant to which a landowner could take as much water as the landowner wanted from the land with no thought of the consequences to others, has been replaced in this country by the "American Rule" of "reasonable use." This Court stated:
 " ' "[R]easonable" was used in a very special or restricted sense. A waste of water or a wasteful use of water was unreasonable only if it caused harm, and any non-wasteful use of water that caused harm was nevertheless reasonable if it was made on or in connection with the overlying land. . . . The American rule came into being with the invention of the high capacity pump, when cities bought land or easements for well fields in the county and lowered the water table beyond the reach of the domestic wells of neighboring farmers. The rule forced the cities to pay damages to the farmers or provide them with better wells and pumps and was an application of the common tort policies of distributing losses and of requiring those who receive the benefits of a harmful activity to pay its costs.' "
Henderson, 388 So.2d 900, 902 (1980). This Court in Henderson
found that the quarry owner's diversion of the groundwater, incidental to the use of the owner's land, interfered with the plaintiff's use to such an extent that a balance needed to be struck and that the rules of liability under the laws of nuisance applied. This ruling changed the controlling legal theory in land subsidence cases from a traditional negligence theory to a nuisance theory in the context of property damage caused by a continuing activity involving the use of underground water. See Harper v. Regency Development Co.,399 So.2d 248, 253 (Ala. 1981).
The American "reasonable use" rule was formally adopted by this Court in Adams v. Lang, 553 So.2d 89 (Ala. 1989), as controlling in cases involving disputes over underground water. In Adams, this Court affirmed a summary judgment in favor of the defendant, whose use of the water under his land (to fill his commercial catfish ponds) was held to be reasonable, even though this use periodically caused his neighbor's wells to run dry. This Court distinguished Adams from Henderson, noting thatHenderson concerned the interference with a plaintiff's use (for consumption or subterranean support) of groundwater by a defendant's diversion of that water incidental to use of his own land, whereas Adams concerned itself with a beneficial use of the water to the land from which it was withdrawn.
Adams dealt with the use of water beneficial to the land from which it was taken, and did not address the issue presented in this case — whether one landowner, here a municipality, can pump water from a common bed of groundwater beneath its property for use off that property if the adjoining landowners are injured or damaged.
Because the precise issue presented in this case is one of first impression in Alabama, we have reviewed the case law of other jurisdictions. Other states faced with this particular fact situation agree with this Court's conclusion. As the Supreme Court of Pennsylvania stated in the case ofRothrauff v. Sinking Spring Water Co., 339 Pa. 129, 14 A.2d 87
(1940):
 "[T]he marked tendency in American jurisdictions in later years has been away from the doctrine that the owner's right to subsurface waters is unqualified; on the contrary *Page 739 
there has been an ever-increasing acceptance of the viewpoint that their use must be limited to purposes incident to the beneficial enjoyment of the land from which they are obtained, and if their diversion or sale to others away from the land impairs the supply of a spring or well on the property of another, such use is not for a 'lawful purpose' within the general rule concerning percolating waters, but constitutes an actionable wrong for which damages are recoverable. While there is some difference of opinion as to what should be regarded as reasonable use of such waters, the modern decisions are fairly harmonious in holding that a property may not concentrate such waters and convey them off his land if the springs or wells of another are impaired."
See Rothrauff and the cases cited therein; Koch v. Wick,87 So.2d 47 (Fla. 1956); Higday v. Nickolaus, 469 S.W.2d 859
(1971); Volkmann v. City of Crosby, 120 N.W.2d 18 (N.D. 1963);City of Enid v. Crow, 316 P.2d 834 (Okla. 1957); Canada v. Cityof Shawnee, 179 Okla. 53, 64 P.2d 694 (1937); Farmer'sInvestment Co. v. Bettwy, 113 Ariz. 520, 558 P.2d 14 (1976); and Jarvis v. State Land Dep't, 104 Ariz. 527, 456 P.2d 385
(1969) (modified on other grounds, 106 Ariz. 506, 479 P.2d 169
(1970)).
We also note that there are cases in other jurisdictions that hold to the contrary. However, these cases differ materially from the instant case in the facts and the applicable laws. In some cases, the land containing the water at issue was being condemned or annexed by the municipality or district, or the water was upon land previously owned by the city or corporation, making it first in time and right as to possession of the land. Still others dealt with disputes over water rights granted by statute and administered by state agencies. See, generally, Woodsum v. Pemberton Twp., 172 N.J. Super. 489,412 A.2d 1064 (1980); aff'd 177 N.J. Super. 639, 427 A.2d 615
(1981); Sorensen v. Lower Niobrara Natural Resources District,221 Neb. 180, 376 N.W.2d 539 (1985); Village of Tequesta v.Jupiter Inlet Corp., 371 So.2d 663 (Fla. 1979); and Crane v.Borough of Essex Fells, 67 N.J. Super. 83, 169 A.2d 845 (1961).
The City contends that it is seeking a safe water supply for its citizens, that it has complied with all the statutory requirements for the drilling of the permanent well, and that the injury to Mrs. Martin if the well is drilled must be weighed against any injury to the public if it is not. This Court is very aware that the City is attempting to find a permanent source of freshwater, but we do not believe that, in supplying their subscribers with water, municipalities enjoy greater rights than do private individuals or corporations, and in such instances municipalities stand upon the same footing as do private corporations. Cf. City of Montgomery v. Greene,180 Ala. 322, 60 So. 900 (1913). Therefore, the reasonable use rule must apply. As the Supreme Court of Oklahoma stated in Canadav. City of Shawnee, 179 Okla. 53, 64 P.2d 694 (1936):
 "There is no apparent reason for saying that, because the defendant is a municipal corporation, seeking water for the inhabitants of the city, it may do what a private owner of the land may not do. The city is a private owner of this land; and the furnishing of water to its inhabitants is a private business. It is imperative that the people of the city have water; it is not imperative that they secure it at the expense of those owning lands adjoining lands owned by the city . . . The inhabitants of a city must have water, but by our statutes and our Constitution the city is afforded a means of obtaining it without pauperizing those innocent private citizens who have devoted their lifetimes to improving, developing, and maintaining their homesteads."
City of Shawnee, 64 P.2d at 695, 698-700.
In regard to the City's assertion that the plaintiff is asking this Court to usurp the rights of the legislature, we note that Alabama does not have an agency devoted to the conservation and management of its water resources. In the absence of statutory authority, disputes like this one must be decided by the courts, applying common law and equitable principles. The City asserts that it has statutory authority under Ala. Code 1975, § 11-50-5 and § 11-50-235(a)(4), to purchase this property outside its corporate limits *Page 740 
for the purposes stated, but that statutory authority in no way exempts the City from the rule of reasonable use.
We also note that the City of Linden is currently purchasing an adequate and healthy supply of water from the City of Uniontown, and that the equities of this case do not compel us to uphold the summary judgment in its favor.
Based on the foregoing, we reverse the judgment of the trial court and remand the cause to that court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and HOUSTON, KENNEDY, INGRAM, and COOK, JJ., concur.
BUTTS, J., concurs in the result.