On Applications for Rehearing
This Court's opinion of June 28, 1996, is withdrawn and the following is substituted therefor.
On February 24, 1993, Caribe, U.S.A., Inc., filed a complaint in the Mobile County Circuit Court seeking to enforce the nonsolicitation and noncompetition provisions of its employment contract with Dane Romano. Romano had previously been employed by Bordelon Brothers Towing as the director of export operations, and was hired by Caribe on November 17, 1992. Caribe alleged that it had terminated Romano's employment on December 31, 1992, and that Romano had breached the employment contract by working for G B Marine, Inc., as its export coordinator and directly soliciting Caribe's customers. Caribe sought a temporary restraining order and preliminary and permanent injunctions requiring Romano to comply with the terms of the employment contract and sought damages for breach of the contract. Romano answered Caribe's complaint, affirmatively asserting that the employment contract was void and that Caribe did not have a sufficient protectable interest to support the enforcement of the nonsolicitation and the noncompetition provisions of the contract.
After hearing evidence ore tenus, the trial court granted Caribe's request for a permanent injunction. The trial court found that Caribe had a protectable interest "because it has a legitimate interest in restraining Romano from appropriating valuable trade information and customer relationships to which he had access during the course of his employment." The trial court further found that during his employment with Caribe, Romano had access to confidential information regarding Caribe's customer lists, pricing information, and the customers' history of shipments and the shipment quantities and destinations, and that Caribe had treated all of this information as confidential. Based upon its findings, the trial court permanently enjoined Romano from
 "directly or indirectly, competing with Caribe, owning, managing, operating, controlling, or participating in the ownership, management, operation or control of, or being connected with or having any financial interest in any break bulk cargo service that transports cargo from or through ports in Texas, Louisiana, Mississippi, Alabama and the south and west coasts of Florida to or through Caribbean islands, or vice-versa (hereinafter 'geographic restrictions')."
The court further enjoined him from:
 "Soliciting break bulk cargo business (hereinafter 'business'), for himself or any other person or entity, directly or indirectly, from a customer of Caribe . . . as identified in response to interrogatory number 8 . . . for so long as such 'Caribe customer' continues to have such business within the geographic restrictions. . . .
 "Hiring, employing or entering into any partnership, corporation or other business relationship directly or indirectly, with any person employed by Caribe at any time who may solicit any 'Caribe customer,' and *Page 1232 
 "Revealing or divulging any trade secrets or confidential business or financial information concerning Caribe, Wiley J. Falgout, or Stephen S. Reed."
However, the trial court reduced the enforcement period of the noncompetition and nonsolicitation provisions from five years to three years and held that the permanent injunction was entered for "the duration of the period of three years from the date of Romano's discharge."
The trial court also concluded that Romano had breached the noncompetition and nonsolicitation provisions to Caribe's detriment, that the restrictions in the contract were reasonably related to Caribe's protectable interest, and that the nonsolicitation. provision was a partial restraint of trade. The trial court awarded Caribe $1.00 as damages for Romano's breach of contract and held that Caribe was also entitled to a reasonable attorney fee, costs, and expenses from Romano, which were to be determined after a hearing on that issue.
Thereafter, Romano appealed and Caribe cross-appealed to the Alabama Supreme Court. Caribe filed a bill of costs. Following an ore tenus proceeding the trial court entered an order awarding Caribe an attorney fee of $98,000 and $2,998.09 in costs. Romano appealed that order to the Alabama Supreme Court and that court transferred the appeals and the cross-appeal to this court pursuant to § 12-2-7, Ala. Code 1975. This court consolidated the appeals and cross-appeal on the motion of Romano.
Romano raises three issues: (1) whether the trial court erred in holding that Caribe had a protectable interest sufficient to enforce the noncompetition and nonsolicitation provisions of the employment contract; (2) whether the trial court erred in concluding that the nonsolicitation provision was only a partial restraint of trade; and (3) whether the trial court erred in awarding Caribe nominal damages, a $98,000 attorney fee, and costs.
On cross-appeal, Caribe raises two issues: (1) whether the trial court erred in awarding it only nominal damages for Romano's breach of contract, and (2) whether the trial court erred in reducing the enforceability of the noncompetition and nonsolicitation provisions from five years to three years.
We find the first issue — whether the trial court erred in holding that Caribe had a protectable interest sufficient to enforce the noncompetition and nonsolicitation provisions of the employment contract — to be dispositive.
The law regarding covenants not to compete and nonsolicitation agreements was succinctly stated in James S.Kemper Co. v. Cox Assocs., 434 So.2d 1380, 1384 (Ala. 1983):
 "It is clear, as defendants contend, that § 8-1-1, Code 1975, expresses the public policy of Alabama that contracts restraining employment are disfavored. DeVoe v. Cheatham, 413 So.2d 1141
(Ala. 1982). This is so 'because they tend not only to deprive the public of efficient service, but tend to impoverish the individual.' Robinson v. Computer Servicenters, Inc., 346 So.2d 940, 943
(Ala. 1977). Nevertheless, the courts will enforce the terms of a covenant not to compete if:
"1. the employer has a protectable interest;
 "2. the restriction is reasonably related to that interest;
 "3. the restriction is reasonable in time and place;
 "4. the restriction imposes no undue hardship on the employee.
DeVoe v. Cheatham, 413 So.2d at 1142.
 " 'In order to have a protectable interest the employer must possess a "substantial right in its business sufficiently unique to warrant the type of protection contemplated by [a] noncompetition agreement." ' Id. at 1142, citing Cullman Broadcasting Co. v. Bosley, 373 So.2d 830, 836
(Ala. 1979). In the case of a 'post-employment restraint,' as in the present case, justification, according to the Restatement (Second) of Contracts
§ 188, Comment B (1979), generally must be 'on the ground that the employer has a legitimate interest in restraining the employee from appropriating valuable trade information and customer relationships to which he has had access in the course of his employment.' *Page 1233 
Similarly, we have said that 'if an employee is in a position to gain confidential information, access to secret lists, or to develop a close relationship with clients, the employer may have a protectable interest.' DeVoe v. Cheatham, 413 So.2d at 1143."
 I.
The trial court found that Caribe's pricing information, and its customers' histories of shipments, shipment quantities, and destinations were confidential information. The court also found that Romano had access to this information during his six-week tenure with Caribe. However, the law governing Caribe and other common carriers makes this information publicly available.
Federal law, 46 C.F.R. § 514 (1992), requires the publication and filing of "tariffs as well as service contracts and their essential terms, covering the transportation of property performed by common carriers in the foreign commerce of the United States." A tariff is
 "a publication containing the actual rates, charges, classifications, Tariff Rules, regulations, and practices of a common carrier, conference of common carriers, or marine terminal operator. The term 'practices' refers to those usages, customs or modes of operation which in any way affect, determine or change the transportation rates, charges or services provided by a common carrier or marine terminal operator, and, in the case of conferences, must be restricted to activities authorized by the basic conference agreement."
46 C.F.R. § 514.2 (emphasis added).
The essential terms of a service contract include, among other things, the effective date and the expiration date of the contract; the port of origin; the destination port; thecommodities covered by the contract; the minimum volume of cargo; the contract rate; and liquidated damages for nonperformance. 46 C.F.R. § 514.17(d)(4)(ii) and (d)(7)(i), (ii), (iii), (iv), (vi), (vii).
Moreover, 46 C.F.R. § 514.1(c)(1) specifically requires common carriers to file with the Federal Maritime Commission, and to keep open to public inspection, "tariffs showing all rates, charges, classifications, Tariff Rules and practices for transportation between U.S. and foreign ports."
Additionally, John F. Kirkpatrick, an operator of a steamship business, testified that a shipper's export declaration contains the same information as the bill of lading, and that a service of the Journal of Commerce provides the export declaration information to the public. A bill of lading states the shipper's name, the bill of lading number, the receiver's name, and the cargo's "weight,measurement, and sometimes the ocean freight. . . ."
Matters of information common to others in the business or easily obtainable by such others do not rise to the status of a protectable interest. Birmingham Television Corp. v. DeRamus,502 So.2d 761 (Ala.Civ.App. 1986). As outlined above, Federal law requires that Caribe publicly file its pricing information, shipment quantities and destinations, and the shipper's name, the receiver's name, and the cargo weight. Because this information is available to the public and easily obtained, Caribe has no protectable interest in such information.
 II.
The trial court also found that Caribe had a protectable interest in its customer lists. However, the lists Caribe submitted as having been given to Romano contain only the name of the customer. They do not identify Caribe's contact with the customer, the customer's address and telephone number, or the customer's shipment history. Further, Terry Bordelon, one of the former owners of Bordelon Brothers, and Kirkpatrick both testified that the identities of bulk cargo customers are well known throughout the industry and that it is not difficult to find out the identity of those customers. Bordelon also testified that Stephen Reed had worked for Bordelon Brothers before he became associated with Caribe and that Reed used the Caribbean Service Directory (the Directory), a listing of Bordelon Brothers' customers and their individual contacts, at Bordelon Brothers. Bordelon further testified that Reed had taken a copy of the Directory with him when he left Bordelon Brothers and that he did not consider the *Page 1234 
Directory to be confidential, so he did not object when Reed took a copy of the Directory with him when he left Bordelon Brothers.
Romano testified that he kept a copy of the Directory when he left Bordelon Brothers and that he used the Directory and his address book to book cargo for Caribe. Romano denied that he was given any customer lists during his six-week employment with Caribe. However, Reed testified that he gave Romano a copy of Caribe's telephone list and customer lists to use in booking cargo. Reed also testified that Romano had access to customer files that contained information regarding the individual customer's shipment histories, shipment quantities, rates, and destinations.
After carefully reviewing the record, we conclude that the customer lists given to Romano during his six-week employment with Caribe were neither unique nor confidential; such lists do not rise to the status of a protectable interest. In fact, the information contained in the lists was commonly known to others in the business and if not known was easily obtainable by such others. DeRamus, supra.
Whether to grant or to deny injunctive relief rests in the sound discretion of the trial court and the trial court's ruling will not be set aside unless that court has abused its discretion. Martin v. City of Linden, 667 So.2d 732 (Ala. 1995). Further, when a trial court hears testimony ore tenus,
 " 'its judgment based upon that testimony is presumed correct and will be reversed only if, after consideration of the evidence and all reasonable inferences to be drawn therefrom, the judgment is found to be plainly and palpably wrong. . . . Of course, this rule is without application when the trial court erroneously applies the law to the facts before it.' "
Moore v. McNider, 551 So.2d 1028, 1029-30 (Ala. 1989) (quotingMcInnis v. Lay, 533 So.2d 581, 582 (Ala. 1988)).
Based on the foregoing, we find that the trial court misapplied the law to the facts before it. We hold that the trial court erred in holding that Caribe had a protectable interest in its pricing information, its customers' history of shipments, shipment quantities, and destinations, and its customer lists, and that the trial court abused its discretion in entering the permanent injunction. See § 8-1-1;DeRamus; Corson v. Universal Door Systems, Inc., 596 So.2d 565
(Ala. 1991). The permanent injunction is therefore due to be vacated, as is the trial court's award of nominal damages, the $98,000 attorney fee, and costs. DeRamus, supra.
"Based on the facts and circumstances in this case, we conclude that the [injunction was], as a matter of law, wrongfully issued; therefore, [Romano], having obtained a dissolution of the [injunction], [is] entitled to whatever costs, damages, and attorney fees [he is] able to prove to the trial court." Talladega Little League, Inc. v. Anderson,577 So.2d 1293, 1295 (Ala. 1991).
The judgment of the trial court is reversed, and the cause remanded for further proceedings.
OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATIONS OVERRULED; RULE 39(k) MOTION DENIED; REVERSED AND REMANDED WITH INSTRUCTIONS.
THIGPEN and MONROE, JJ., concur.